Steven Wayne Bonilla

J-48500, 3 - EY - 13

San Quentin CA 94974

Petitioner / pro se

**FILED**

Oct 29 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

United States District Court

Northern District of California

Steven Wayne Bonilla,

Plaintiff,

vs

Thomas Bendley Joseph
A. Soldani, Dale J. Blea,
Cara L. Ruiz, Andrew Y.
Calip, John Doe 1-40,000,
Defendants

In Personal and Professional
Capacities, [See Exhibit R]

Case no. **4:20-cv-07648-PJH (PR)**

COMPLAINT FOR DAMAGES

Unlimited

DEMAND FOR JURY TRIAL

and to be present at such trial

MISCARRIAGE OF JUSTICE by Clear
Aiding and Abetting in the form of
Advocating from the Bench by the
California Supreme Court's Known
Promulgation of Underground
Policy of Attainder, which Denies
Plaintiff's Constitutional Rights.
All of which, is Proscribed / Prohibited
by the U.S. Constitution, Article I, Section 9.

— Expedited Review Requested —

## Introduction

Plaintiff/Petitioner/ Steven Wayne Bonilla brings this entitled cause of action before this Honorable Court seeking justice and praying that the court follows the rule of law. The court has, in the past and continuing to present day, has denied the Plaintiff of even the basic Constitutional principals of seeking redress of grievances for 32 plus years of unlawful and false imprisonment for a crime that he did not commit. Our Constitutional principal of meaningful access to the Court's underscores more than than the mere filing of a complaint for redress of grievances. It also includes the proper lawful processing of said complaint, and to receive a review by an unbias jurist who by mandate, and his oath of office, protects the Rights of all litigants, including pro se indigent prisoners of a minority class citizen. A prisoner's Constitutional Rights do stop at the prison gates, as a matter of law.

Plaintiff is submitting his complaint in proper format; and seeks trial by jury and to be present at such trial/hearing to move forward with his entitled case and claims in a numerical sequence/order for the Court's convience. All issues/ claims are bolstered by case law describing overt and covert acts by agents acting under Color of Authority in their personal agenda to deprive Plaintiff, an innocent litigant of his guaranteed Constitutional Civil. Plaintiff confers upon this Honorable Court concurrent jurisdiction to adjudicate all claims using State and Federal Law, with the Federal Law superseding State Law where necessary.

## Section I - Jurisdiction

(1) This Court has jurisdiction over this complaint because it arises under the laws of both the State of California and the United States of America.

(2). A void order or judgment is subject to collateral attack AT ANY TIME AND IN ANY PLACE. [148 Cal. App. 2d 845].

(3). Extrinsic fraud or mistake, or a judgment void on the face of the record, are the ONLY cases where a collateral attack may be made. [85 Cal. App. 2d 476

(4) Judgment of court of superior jurisdiction may be collaterally attacked upon ground that court by which it was rendered had no jurisdiction, either of subject matter or of person of defendant, or both. [34 Cal. 391].

(5). Judgment, whether of superior or inferior court, may be collaterally attacked for lack of jurisdiction either of subject matter or of person, or both, judgment being void if want of jurisdiction in either respect. [007 Cal. App. 288].

(6). When there is an appeal from a void judgment the reviewing court's jurisdiction is limited to reversing the trial court's void acts. [35 Cal. 4th 180].

(7). A judge of the district court is under a duty to examine the basis for jurisdiction at any and all times during the pendency of the litigation. [404 F. Supp. 664, 665; 2095.2d 427].

(8). Every appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the court in a cause under review. And if the record discloses that the Alameda County Superior Court was without jurisdiction; because the federal grand jury subpoena

was never entered on the court docket as an exhibit in case no. H-12210-A/ because the subpoena NEVER EXISTED, NOR WAS IT EVER SERVED / because the telephone records were secured in an illegal search and seizure / because the prosecution committed fraud upon the court by fraudulently claiming that the phone records were obtained by the FBI pursuant to a federal grand jury subpoena / the court will notice the default, even if the parties make no contention concerning it. But when the court in a cause under review lacks jurisdiction, the reviewing court has jurisdiction on appeal, not of the merits, but merely for the purpose of correcting the error of the court in a cause under review. [523 US 83].

(9) "A court may not rule on the merits of a cause without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction), and the parties, (personal jurisdiction). Without jurisdiction the court can NOT PROCEED AT ALL IN ANY CAUSE; it may not assume jurisdiction for the purpose of deciding the merits of the case." [549 US 422].

(10). A party can not be PRECLUDED from raising the jurisdictional question by any form of laches, waiver or estoppel. Even if the parties do not raise the issue, the court can and MUST raise the issue sua sponte and determine it forthwith. [404 F. Supp. 664, 665; 116 F. 2d 449, 453; Federal Rules of Civil Procedure, Rul 12(h)(3)].

(11). If it appears by the record or otherwise that the court NEVER HAD JURISDICTION over the person of the defendant, the judgment will be pronounced a nullity, whether it comes

- 3 A -

directly, or collaterally in question; and this is so whether the court be of inferior or superior jurisdiction. [27 Cal. 300].

(12). Where there is no jurisdiction over the subject matter, there is, as well, no discretion to IGNORE that lack of jurisdiction. [Federal Rules of Civil Procedure 12(b)(3), 474 F. 2d 215, 219].

(13). Where there is clearly no jurisdiction over subject-matter, (because all of the evidence was secured in an illegal search and seizure), any authority exercised is a USURPED AUTHORITY, and for the exercise of such authority, when the want of jurisdiction is known to the judge, NO EXCUSE IS PERMISSIBLE [80 US 335].

(14). No judicial process, whatever form it may assume, can have any lawful authority outside of the limits of the jurisdiction of the court, (Alameda County Superior Court, Case No. 4-12210-A), or judge, (Benjamin Travis), by whom it is issued; and any attempt to enforce it beyond these boundaries is nothing less [than lawless violence]. [21 Howard 506]

(15). The rule is, that where a limited tribunal takes upon itself to exercise a jurisdiction which does not belong to it, its decision amounts to NOTHING, and does not create a necessity for an appeal... If the court acts without authority, its judgments and orders are nullities; they are not voidable, but simply void, AND FORM NO BAR TO A RECOVERY SOUGHT, even prior to a reversal, in opposition to them, they constitute no justification, AND ALL PERSONS CONCERNED IN EXECUTING SUCH JUDGMENTS, OR SENTENCES, ARE CONSIDERED IN LAW AS TRESPASSERS ON ONES CIVIL RIGHTS OF DUE PROCESS. [49 US 495].

(16). Judges have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not

given, the one or the other would be treason to the Constitution. [6 Wheat 264].

(17). The general rule is that a justice who acts in a case of which he has no jurisdiction, or who exceeds his jurisdiction, is liable in damages to any party injured.... It is well settled that he is liable for acts committed to the damages of a plaintiff where he has no jurisdiction at all in the particular case. [217 Miss 576], And if his acts were part of a conspiracy, he is properly held responsible for the consequences.[633 F. 2d 847].

Section II — Venue

(1). Venue is appropriate in this court because the court held in People v Jones (1964) [228 Cal, App, 2d 74], that venue for a conspiracy is in any county in which an overt act was committed by any one of the conspirators.

(2). California Penal Code § 184 holds that the trial case of conspiracy may be held in any county in which such act was done.

(A). With the Petitioner being a customer of the telephone company and his phone was located in Santa Clara County, this United States District Court has venue;

(B). With all of the probable cause to arrest the Petitioner was the fruit of a federal grand jury subpoena that NEVER EXISTED, NOR WAS IT EVER SERVED, makes the Petitioners arrest in Santa Clara County a kidnaping. Thus, this United States District Court has venue.

Section III — Conspiracy

(1). There is a clear distinction in law of conspiracy as applied to criminal as differentiated from civil cases. The gist of the crime of conspiracy is the agreement to commit the unlawful act, while the gist of the tort is the damages

resulting to Plaintiff, Steven Wayne Bonilla, from an overt act or acts done pursuant to the common design [DeVries v Brumback, 53 Cal. 2d 643].

(2). To render a person civilly liable for injuries resulting from a conspiracy of which he was a member, it is not necessary that he should have joined the conspiracy at the time of inception; every one who enters into such a common design is in law a party to every act previously or subsequently done by any of the others in pursuance of it. [53 Cal. 2d 643].

(3). In tort the major significance of a conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether he was a direct actor and regardless of the degree of his activity. [53 Cal. 2d 643].

(4). So that we are crystal clear here, anyone who willfully deprived the Plaintiff/Petitioner of his guaranteed constitutional or statutory rights, irrespective of whether he or she was a direct actor and regardless of the degree of his or her activity, who were concerned in executing the Plaintiff's judgment, are participants in the wrongful act are civilly liable for every act previously or subsequently done by any of the others in pursuance of the common design of the conspiracy. Simply put, 18 USC § 241, makes it a federal crime for them to conspire to accomplish the same willful act as the conspiracy to willfully deprive the Plaintiff of

his guaranteed Constitutional Rights. [18 USC § 242].

(A). The law is very clear, that a person can not be precluded, nor barred, from raising the jurisdictional question for any reason. And the judge cannot proceed further until the jurisdiction question is determined. [116 F. 2d at 453, 67 FRD 22, 25]. Which only goes along with the court's holding in [523 US 83 and 549 US 422], stated above. And any authority exercised by the judge is a usurped authority in an underground policy of attainder to deny the Petitioner of his civil rights. Which is prohibited by the U.S. Constitution, Article One, Section Nine. Therefore, until the judge / defendant can first show / prove, that he acquired jurisdiction, he is in no position to cite any law or court rules, as the court held in [80 US 335], NO EXCUSE IS PERMISSIBLE when he has acted in the clear and complete absence of jurisdiction. And proving jurisdiction was acquired is impossible to do with there being no federal grand jury subpoena.

(B). The court clerk is also in no position to cite any law or court rules when he or she was concerned in executing the judgment without authority or jurisdiction. When he or she had a duty, pursuant to the court's holding in In re Sena, [94 Cal. App. 4th 836, 115 Cal. Rptr. 2d 22] and pursuant to the court's holdings in [8 Cal 4th 728], citing Penal Code § 1476, to issue an order to show cause.

(C). As stated above, everyone who enters into such a common design is in law a party to every act previously or subsequently done by any of the others, in pursuance of

-7-

the common design, irrespective of whether he or she was a direct actor and regardless of the degree of his or her activity. Simply put, any involvement in the Plaintiff's sentence, makes the party liable for the acts done by any of the others in the conspiracy. So by the court clerk doing what the judge told the clerk to do in response to the Plaintiff's petition, is the same as if he or she was making the decision. The same anology goes for the judge acting in the clear and complete absence of jurisdiction, it is the same as if the judge committed the illegal search and seizure himself. And thus, is personally liable and responsible for the consequences.

Section IV

In this petition, and in every petition/suit submitted by the Petitioner, questions the court's lack of jurisdiction. Whereby, this court, and all previous courts, must first address, not only its own jurisdiction, but also that of the Alameda County Superior court, Case No. H-12210-A, that convicted an innocent person of a crime that he did not commit and innocent of all charges. So before this Honorable court cites any laws, rules or claims that the Plaintiff is a vexatious litigant, the court must pull a rabit out of the hat, with a federal grand jury subpoena dated before the illegal search and seizure was committed. Even though I have been indigent for years and continue to file waivers for court fees, even if I did not file a waiver, the judge is in no position to use that court rule to dismiss the action until he first determines that he has jurisdiction or authority to do so. Which he will never have because the federal grand jury subpoena NEVER EXISTED.

- 8 -

Section VIII - Plaintiff

Plaintiff, Steven Wayne Bonilla, address is: J-48500, 3-EY-13, San Quentin State Prison, San Quentin CA 94974. Plaintiff makes the demand of his Constitutional Right to personally appear at trial when one takes place. Which will require this Honorable Court to issue a court order prior to any such trial or telephone hearing.

The Plaintiff acting in pro se status, respectfully asks this Honorable Court to employ standards less stringent to his submission than those certified by counsel and liberally construe the Plaintiff's arguments on the illegal search and seizure, its coverups by the conspiracy, and the fraud committed upon the court.

Section IX - Defendants

All of the defendants were or are employed at Madera County Superior Court, 200 South G Street, Madera, California 93637

## Section V

The Fourth Amendment of the U.S. Constitution, guarantees people the right to be secured in their telephone records against unreasonable search and seizure, and it provides that no subpoena ducestecum will be issued except upon probable cause. But there was no probable cause and evidence from an illegal search and seizure is inadmissible.

## Section VI

When such violation takes place, the court held in Wong Sun v. U.S., [371 US 471, 83 S.Ct. 407, 9 L.Ed. 2d 441], that the evidence which is spawned by or directly derived from an "ILLEGAL SEARCH" is inadmissible against the defendant because of its original taint. This doctrine is the effect that an "UNLAWFUL SEARCH" taints not only evidence obtained at the search, but facts discovered by process initiated by the "UNLAWFUL SEARCH."

## Section VII

To ensure that the telephone records are covered by the Fourth Amendment, the Federal Legislature enacted the Criminal Procedure Code, 18 USC § 2702 and more specifically, 18 USC § 2702 (a)(3), which states the following:

"(3). A provider of remote computing service or electronic communication service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications covered by paragraph (1) or (2) to ANY GOVERNMENTAL AGENCY."

Section 8III

To ensure that the telephone records are covered by the Fourth Amendment the California State Legislature enacted, "CUSTOMER RIGHT OF PRIVACY" – Public Utility Code §2891, and more specifically – Public Utility Code §2891 (d)(6), which states the following:

"(6). Information provided to a law enforcement agency in respone to lawful process issued under state or federal law." Section 1 of Stats, 1986, c 821, provides:

"The Legislature hereby finds and declares that residential telephone and telegraph customers and subscribers have a right to private communications, that PROTECTION of this right to privacy is of PARAMOUNT STATE CONCERN, and to this end, has enacted this act."

Section IVX

(1) The application of the Fourth Amendment depends on whether the person involking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action, citing, Smith v Maryland, [442 US 736].

(2). The above cited laws, certainly gives the Petitioner a justifiable, and a reasonable, and a legitimate expectation of privacy in his telephone records. That was invaded by the government, which he in his appeal on pages 46 through page 57, as shown below:

– 11 –

with her husband in the past.  She spoke to the owner, Randy Ontiveros and one of his employees, Francine...Also on Thursday, Rand Investigations utilized a helicopter to search for Jerry's car."

According to a Contra Costa Sheriff's Office report prepared by Officer Linda Agresta, Exhibit 16, p. 1, Susan Harris indicated that she "has hired a Private Investigator by the name of 'Randy' of Rand Investigation.  Car phone 265-3101.  Unknown progress of investigation."  Officer Agresta's report also noted: "Private investigator working with cellular company to track area where last phone call was made."  (Exhibit 16, p. 2.)

Similarly, Exhibit 17, p. 1, a Pleasanton California Police Department report dated October 27, 1987, states that on October 23, 1987, Pleasanton police officer Lyness met with Susan Harris.  At that time Susan Harris told the police officer the following: "She informed me that she had hired a private investigator to look into this matter.  She had hired the firm of Rand Investigations in El Cerrito."  During this conversation, Exhibit 17, p. 2, Susan Harris stated that she was "convinced that Bonilla had something to do with Mr. Harris (sic) disappearance."  Officer Lyness's report further stated that the officer had spoken to FBI agent Duke Deidrich who said that they, the FBI, had been conducting surveillance of Bonilla "and that they were going to seek a subpoena for his phone records."  (Exhibit 17, p. 4.)

Officer Agresta of the Contra Costs County Sheriff's Office further noted in her report that on November 3, 1987,[5] he spoke to FBI agent Duke Diedrich.  FBI agent Diedrich said "that Rand Investigations was following leads regarding Steve Bonilla."  (Exhibit 16, p. 4.)  Officer Agresta called Rand Investigations on November 3, and again

on November 4, 1987, without success.  On November 9, 1987, according to Officer

Agresta's report, she meet with Francie Koehler of Rand Investigations at Susan Harris'

residence.  The meeting took two hours and Officer Agresta and Francie Koehler

"discussed the case and all facts know to date."  (Exhibit 16, p. 4.)  Officer Agresta and

Franice Koehler then went to Jerry Harris' office and "checked all financial and personal

records."  (Exhibit 16, p. 4.)

On November 12, 1987, Officer Agresta had a meeting with FBI agent Diedrich

and Francie Koehler at the FBI office in Concord, California.  (Exhibit 16, p. 5.)

According to Officer Agresta's report, "After the meeting, Koehler and myself did

additional follow-up regarding Steven Bonilla.  At 1500 hrs. Koehler, Dietrich (sic) and I

met at the Harris residence and discussed all information to date with Susan (Harris)."

(Exhibit 16, p. 5.)

On November 16, 1987, Francie Koehler and Officer Agresta went together to

Castroville, California in Monterey County.  They met with workers at SteelFab, a

company that Jerry Harris had acquired from his father.  Harris had also visited

SteelFab on the day he disappeared. (Exhibit 16, pp. 5-6.)

On November 24, 1987, Officer Agresta met again with Francie Koehler, Randy

Ontiveros, and FBI agent Duke Deidrich.  According to Officer Agresta's report, they

"discussed and reviewed the facts to date.  Randy (Ontiveros) and I went and did

surveillance on Steven Bonilla's residence, 102000 Miller Apr. 411, Cupertino, CA.

Neg. Contact with Bonilla." (Exhibit 16, p. 6.)

Finally, according to her report, on January 28, 1988, Officer Agresta "met with

Francie Koehler at 8:00 a.m. at her office in El Sobrante.  Examined bookkeeping

records from a seedling project that V-Harris was involved in for approximately 8 years, 1978-1986. Accounting records show 4-5 million dollars being put through the account in one month period." (Exhibit 16, p. 7.)

On November 12, 1987, Francie Koehler of Rand Investigations turned over to FBI agent Diedrich a three-page handwritten statement which purportedly was Susan Harris' recollection of a conversation she had with Bonilla on November 5, 1987. (Exhibit 18.)

3.     By November 3, 1987, Rand Investigation had complied a fifteen page report concerning the disappearance of Jerry Harris.   The report included a credit bureau print out on Jerry Harris, TRW credit printouts, and copies of microfilm from the Contra Costa County Assessor's Office concerning Harris' assets.   Exhibit 19.  The report also listed the name and telephone number of a "disgruntled ex-employee" and Steven Bonilla's home and cellular telephone numbers.  A stamp on the face-page of the report indicates that the report was disseminated to law enforcement agencies including the Washoe County Sheriff's Office in Nevada.

4.     As part of Rand's investigation, on October 22, 1987, at 2:19 p.m., GTE Mobilnet, a cellular telephone company, ran seven-page compute printout of all of the cellular telephone calls made by Jerry Harris on October 20, 1987.  These telephone records were then sent to "Randy Ontiveros/Susan Harris, SF. CA." by fax.   Exhibit 20. These records were not obtained by way of a subpoena, search warrant, or any other legal process.

5.      As part of their investigation, Randy Ontiverous obtained Steven Bonilla's long distance telephone records from a private individual, or "source," who worked at Pacific Bell telephone, Bonilla's long distance telephone carrier.  Randy Ontiveros obtained Bonilla's telephone records without legal process and with the knowledge or consent of Steven Bonilla. . He paid approximately $200 in cash for Bonilla's records. Randy Ontiverous and Francie Koehler then prepared a list on Rand Investigations stationary of long distance telephone calls made from or charged to Bonilla's home telephone number.  A copy of that list is Exhibit 21.  The list sets forth long distance calls made from or billed to Bonilla's home telephone from September 29  to October 27, 1987.  This listed indicated that on October 10, 1987, Bonilla placed a long distance call to telephone number 602-994-8043, which is in Scottsdale, Arizona.  The list also indicated that on October 4, 1987, Bonilla placed a call to 702-738-8417 which was the home phone number for Brad Keyes in Elko, Nevada.  The list of long distance telephone calls prepared by Randy Ontiveros was disseminated to law enforcement as . it is clearly stamped "Washoe County Sheriff's Office" on the front.

In addition to the list of long distance telephone calls described above, it appears that Randy Ontiveros gave the FBI a copy of Bonilla's actual long distance telephone records for the thirty day period of August 9 through September 8, 19887.  A copy of these records is Exhibit 22.  These telephone record show a call from Bonilla's residence to La Jolla, California, telephone number 619-581-1210 on August 30 and September 1, 1987.

The list of Bonilla's long-distance telephone calls prepared by Randy Ontiveros (Exhibit 21) and Bonillas telephone records (Exhibit 22) were given to the FBI on or

before October 30, 1987.  Exhibit 23 is an FBI telex dated October 30, 1987.  The telex

is addressed to FBI field offices in all areas where Bonilla had made long distance calls

listed in the Rand Investigation's list, Exhibit 21, or listed in Bonilla's phone records for

August 9th through September 8th, (Exhibit 22),  including Phoenix, Arizona, San Diego,

California, and Las Vegas, Nevada.  After stating that "no info has been received

concerning the whereabouts of victim (Harris) or his missing Mercedes-Benz vehicle,

nor has any certain motive for victim's disappearance been ascertained," the FBI telex

stated that "victim's family has determined that Bonilla recently, specific dates unknown,

made following telephone calls from his residence phone # of 408-446-3850..." The

remainder of that paragraph of the telex has been deleted by FBI.  However, the rest of

the telex directed the regional FBI field offices to "conduct discreet investigations" of the

telephone calls made to their area.  For instance, the telex stated: "Las Vegas at Las

Vegas, Nevada: will conduct appropriate discreet investigation re tel...."  The actual

telephone number investigated was deleted by the FBI.  Similarly, the telex stated:

"Phoenix at Phoenix, Arizona, Will conduct discreet investigation re tel. (deleted by FBI)

will also review DEA file re Bonilla..."  Finally, the San Diego FBI office was directed to

"conduct appropriate discreet investigation re tel. (deleted by FBI)."

On November 16, 1987, FBI agent Joseph Sconzo of the FBI's Phoenix office

interviewed Joe Shipka at his place of business in Scottsdale, Arizona.  Shipka told the

FBI "that he spoke with Bonilla several times on the telephone.  He stated that these

calls were all regarding negotiations involved in this possible (tile) distributorship in San

Diego and that this is the only affiliation that he has with Bonilla."  Exhibit 24: FBI report

of Joseph Sconzo.  Shipka's telephone number, 602-994-8043, is one of the telephone

numbers on the list of telephone numbers prepared by Randy Ontiveros based on Bonilla's long distance telephone records that Ontiveros had obtained from his source at Pacific Bell.

Similarly, Joan Cheverez, who resided in Pacific Beach, California, a small town near La Jolla, was contacted by the FBI agent Stanton of the San Diego FBI office on November 13, 1987. (Exhibit 25: FBI report of agent Stanton dated November 13, 1987.) Ms. Cheverez's residential telephone number, 619-581-1210, appears on the copy of Bonilla's telephone records obtained by Randy Ontiveros and given to the FBI on or before October 30, 1987. Bonilla's telephone records show that Bonilla called Ms. Cheverez on August 31 and September 1, 1987. (Exhibit 22.) When FBI agent Stanton interviewed Ms. Cheverez on November 13, 1987, she stated that she had known Steven Bonilla since junior high school. On September 11, 1987, Bonilla stayed at Ms. Cheverez's residence for one night.

These records, Exhibits 21-25, clearly demonstrate that the FBI possessed and utilized the list prepared by Randy Ontiveros of Bonilla's long distance telephone calls and Bonilla's telephone records for August 9 through September 8, 1987, on or before October 30, 1987, when the FBI telex was sent. These records were obtained illegally and the FBI and other law enforcement officers were well aware that they were illegally obtained when the FBI received the records and utilized them in their investigation of Bonilla.

6.    As indicated in an FBI telex dated February 18, 1988, Exhibit 26, Jerry Harris' body was discovered in the Pyramid Lake region north of Reno, Nevada on

January 10, 1988. The body was not identified until February 12, 1988. An FBI telex dated February 25, 1988, which summarized various telephones made between FBI offices on February 24th, stated that Harris' missing Mercedes was found at the Sacramento airport long-term parking lot on February 24, 1988. (Exhibit 27.) The car first appeared on the parking lot's inventory on October 21, 1987, "indicating that it was probably parked there on October 20, 1987."

7.      Contra Costa County Sheriff Argesta's report, Exhibit 16, indicated, "No investigation done during month of December, due to no additional leads or information." Officer Agresta's report also noted, "On Monday, February 1, 1988, I was informed by Sgt. Ward that (Harris' disappearance) case was to be suspended pending further developments, suspects, or leads." With the discovery and identification of Harris' body and car, the Washoe County, Nevada, Sheriff's Office began an active joint investigation with the FBI.

8.      On February 17, 1988, a meeting was held at the Concord, California FBI office. Attending that meeting were FBI agents Diedrich, Smith, and Weston, Contra Costa Sheriff's Officer Linda Agresta, Francie Koehler of Rand Investigations, and members of the Washoe County Sheriff's Office, including Detective James Lopey. (Exhibit 27, pp. 1-3.)

9.      On February 19, 1988, a federal grand jury subpoena duces tecum was supposedly issued for Bonilla's telephone records and served on Pacific Bell. A copy of

52

that three page subpoena is Exhibit 28.  However, Appendix B to the subpoena, which

was signed by Assistant United States Attorney Robert Ward, is identical to the

Appendix B used in connection with a subpoena duces tecum issued by the grand jury

on October 29, 1987.  A copy of the October 29, 1987 subpoena duce tecum is Exhibit

29.  The only changes to the two subpoenas were "fill-in-the-blank" changes.  Put

another way, the grand jury subpoena dated February 19, 1988, was merely a photo-

copy of the subpoena issued on October 29, 1987, with some minor changes.  If the

February 19, 1988 subpoena was ever actually served on Pacific Bell, the purpose for

issuing the subpoena was to conceal the fact that the FBI had illegally received

Bonilla's telephone records from Rand Investigations on or before October 30, 1987.

No discovery was ever provided to Bonilla's defense counsel at trial of any phase of this

case to indicate that Pacific Bell was actually served with the subpoena and complied

by suppling Bonilla's telephone records to the grand jury.  No discovery was ever been

provided to any defense counsel in this case to indicate that the grand jury, assuming

they received Bonilla's telephone records by way of that subpoena, ever released those

records to the FBI or the Washoe County Sheriff's Office.

Additionally, the fact that a subpoena duces tecum had been issued for Bonilla's

long distance telephone records was not revealed to Bonilla's defense counsel until

after the second penalty phase trial had began.  Exhibit 30 is a letter from defense

counsel Alfons Wagner dated July 6, 1993, seeking a copy of the federal grand jury

subpoena from the Alameda County prosecutor, John Goodfellow.  In his letter,

Wagner notes Goodfellow's claim that he, Goodfellow, had never seen the subpoena.

If this statement is true, it is a further indication that the prosecution sought to conceal

the fact that it had obtained Bonilla's telephone records illegally long before the grand jury subpoena was supposedly issued. Exhibit 31 is a second letter from Wagner seeking the subpoena from Goodfellow on November 15, 1993.

10.     On March 17, 1988, Detective James Lopey of the Washoe County Sheriff's Office decided to conduct an interview of Rayann and Brad Keyes in Elko, Nevada. In his written report dated April 3, 1988, Lopey stated that he "originally wished to contact Bradley Keyes due to the fact that Steven Bonilla had telephoned Brad Keyes' residence on or about 10-04-87." (Exhibit 32: sixteen page report of James Lopey, p. 3.) Detective Lopey knew "that Steven Bonilla had telephoned Brad Keyes' residence on or about 10-04-87" solely because that information was contained in the list of long distance telephone calls made by Bonilla that was prepared by Randy Ontiveros and given to the FBI on October 29, 1987. (Exhibit 21.) That is, Detective Lopey knew that Bonilla had called Keyes on October 4, 1987 only because Randy Ontiveros had illegally obtained Bonilla's telephone records from his source inside Pacific Bell and had turned those records over to the FBI who knew that Ontiveros had obtained the records illegally. Brad Keyes made numerous statements to Detective Lopey implicating Bonilla in the killing of Jerry Harris and later testified as the prosecution's star witness at the Preliminary Hearing, guilt phase, and both penalty phases of trial. Detective Lopey's report also stated that FBI agent Christensen was "invited to accompany (Lopey) on the trip due to the FBI's ongoing interest in the investigation."

At the guilt phase of trial, Detective Lopey said that "as a result of a review of Mr.

Bonilla's telephone records" he discovered a telephone call to Brad Keyes in Elko, Nevada. At that time he didn't know if Keyes had any involvement in the case. Keyes was, "however, the only connection at that time with Mr. Bonilla and Nevada." (RT 5480-5481.)

11.    Prior to Bonilla's arrest in September, 1988, John Whitson, an investigator for the Alameda County District Attorney's Office, sought to further conceal the fact that Bonilla's telephone records were obtained illegally by obtaining and executing a search warrant at Pacific Bell Telephone Company. The search warrant sought Bonilla's telephone records which, of course, the police already had. In his 78-page search warrant affidavit, Exhibit 33, Whitson stated: "Bradley George Keyes...was contacted by Eric Christensen, Special Agent of the Federal Bureau of Investigation, and Sgt. James Lopey, Washoe County Sheriff's Department, Washoe County, Nevada on March 17, 1988." (Exhibit 33, p. 14.) Whitson did not say how or why Christensen or Lopey had gone to Elko to contact Keyes or how they had located Keyes. Later in his affidavit, Whitson acknowledged that FBI agent Smith had given him Bonilla's telephone records and claimed that "Agent Smith indicated that these toll records were obtained pursuant to a federal grand jury subpoena." (Exhibit 33, p. 36.) Whitson did not explain why he was obtaining Bonilla's telephone records when he already had received them from the FBI. In fact, Whitson was seeking the telephone records by way of a search warrant because he knew that the FBI had obtained the records illegally from Rand Investigations. Whitson also knew that the federal grand jury subpoena supposedly issued in February, 1988 for Bonilla's telephone records either was never issued, never

complied with, and/or was merely an attempt by the FBI to conceal the fact that it had already illegally obtained Bonilla's telephone records.

The above facts demonstrate that Bonilla's telephone records were illegally obtained by Randy Ontiveros or Francie Koehler acting as an agent for the law enforcement agencies investigating the disappearance of Jerry Harris.   The FBI and the Washoe County Sheriff's Office then used those illegally obtained records to find and interrogate Brad Keyes.  Once they realized that the only evidence which lead them to Brad Keyes had been obtained illegally, the prosecution, including the FBI, Washoe County Sheriff's Office, John Whitson, and Jon Goodfellow, engaged in an elaborate scheme to cover-up the truth.  Goodfellow and Whitson knew that if counsel for Bonilla found out that the evidence which lead the prosecution to Brad Keyes had been obtained illegally, the defense would move to suppress all evidence tainted by that illegality, including the testimony of Brad Keyes.

The appropriate remedy for the prosecution illegal conduct and cover-up to vacate the guilt and penalty phase judgments imposed on Bonilla and remand the case for a new trial at which of all evidence derived from illegality, including the testimony of Brad Keyes, is suppressed.

## CLAIM THREE

**The Prosecution's Misconduct Deprived Bonilla of Due Process And His Sixth Amendment Rights to a Fair Trial and to Present a Defense**

Bonilla's confinement and sentence are illegal, unconstitutional and void under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, under Article I, sections 1, 7, 13, 14, 15, 16, 17, 24, 26, 28 of the California Constitution, customary international law, international human rights law and *jus cogens*, and under the statutory and decisional law of the State of California and because of the prosecution's misconduct prior to trial, during the guilt phase trial, and during each of the two penalty phase trials.

Due process under the Fifth and Fourteenth Amendments is violated and the Sixth Amendment right to a fair trial and present testimony is violated when the prosecution intimidates a witness to testify falsely for the prosecution. *United States v. Heller* (9th Cir. 1987) 830 F. 2d 150, 152-153. "It is established that a conviction obtained through the use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Brown v. Borg, supra,* 951 F. 2d at 1015. Additionally, a defendant's right to a fair trial under the Sixth Amendment is violated if the prosecution conceals exculpatory evidence which, had it been revealed, would have exposed the prosecution use of false evidence. Id.

In Claim One and Claim Two Bonilla set forth facts which demonstrated that the prosecution embarked on an elaborate scheme to convict Bonilla based upon false and concealed evidence. The prosecution used illegally obtained evidence to find Brad KeYes,

(3). The verified appeal, above, prepared by Attorney David Nickerson, submitted to the California Supreme Court, in the Plaintiff's appeal Case No. S-129612, as shown on page 49 of the Appeal, [Exhibit A], states facts that were told to him in his interview with Randy Ontiveros and Francie Koehler of Rand Investigation. Attorney Nickerson clearly stated, under oath, that they "ADMITTED" to him that they had obtained Bonilla's long distance telephone records from a private individual, or source, who worked at Pacific Bell Telephone Company/AT&T Inc., who was Bonilla's long distance telephone carrier, Randy Ontiveros and Francie Koehler "ADMITTED" to Attorney Nickerson that they had obtained Bonilla's phone records without going through the legal process and without knowledge or consent of Steven Bonilla. Along with "ADMITTING" that they HAD TO PAY THEIR SOURCE at the telephone company, approximately $200.00 in cash to obtain Bonilla's phone records, THE PAYING OF AN ILLEGAL BRIBE, SHOWS INTENT AND KNOWLEDGE TO COMMIT A CRIMINAL ACT in violation of the Fourth Amendment, 18 USC §2703(a), and Customer's Right to Privacy-Public Utility Code §2891, enacted by the State Legislature in their paramount concern for a person's right to privacy in their telephone communications and records. Such a criminal act of taking or giving a "BRIBE," mandates that the defendants disclose any and all employees who accepted or gave a monetary "BRIBE" and be held liable for the damages it caused.

(4). The FBI's October 30, 1987 report, calls for the investigation of Bonilla's phone calls, [Exhibit C]; That were provided to the FBI by Randy Ontiveros and Francie-Koehler of Rand Investigation, Knowing, that such records had been obtained without a subpoena or legal process in violation of the Fourth Amendment, 18 USC §2703(a), Public Utility Code §2891, But investigated them anyway in a conspiracy to murder the Plaintiff/Bonilla under the Color of Law and Authority.

## Fourth Amendment Violation of
## an Illegal Search and Seizure

(1). The conspiracy/prosecution falsely claimed on page 36 of the arrest warrant affidavit, [Exhibit D], that the Plaintiff's phone records for (408)446-3850, from which all of the evidence in the case is the fruit, thereof, were obtained pursuant to a federal grand jury subpoena. However, under a federal court order in Case No. C-02-0636 MHP, the FBI and the United States Attorney's Office have admitted that the federal grand jury subpoena NEVER EXISTED, NOR WAS IT EVER SERVED ON PACIFIC BELL TELEPHONE COMPANY. [See Exhibit E]. Therefore, it must be construed that Bonilla's phone records were secured in an illegal search and seizure by Randy Ontiveros and Francie Koehler, just as they told Attorney Nickerson in their interview with him.

(2) Obviously, the FBI knew that this was in violation of the Fourth Amendment; 18 USC §§ 2703 (a), and Public Utility Code §2891; So to conceal this Fourth Amendment violation of Bonilla's guaranteed Constitutional Civil Rights, the FBI sent two letters to the U.S. Attorney's Office, [See Exhibit F], to falsely fabricate the belief, that Bonilla's phone records had been obtained pursuant to a federal grand jury subpoena, which required the approval of the Department of Justice, (DOJ), and a federal court order to disclose the secret, federal grand jury information to the Alameda County District Attorney's Office, So they could use the information, that was the fruit obtained from the illegal search and seizure, to prosecute the Plaintiff.

There is no need to go into the suborn perjury of the witnesses, that was, fraudulently used to convict Bonilla of a crime that he never committed, when all of the perjured testimony is inadmissible evidence being the fruit from the poisoness tree. [371 US 471].

(3). With the U.S. Attorney's Office obviously "KNOWING" that there was no such subpoena for Bonilla's telephone records, nor had they conducted any such federal grand jury investigation, the U.S. Attorney's Office submitted an application for the disclosure of grand jury material, that they "KNEW" had been obtained in an illegal search and seizure, to the Alameda County District Attorney's Office for them to use in prosecuting the Plaintiff, Steven Bonilla, [See Exhibit G], for the application, supported by the Assistant U.S. Attorney's Declaration, and the court order that granted the disclosure of grand jury information, that NEVER EXISTED, to Alameda County District Attorney's Office. Take notice that the Court Order was issued August 15, 1988.

(4). On August 18, 1988 the U.S. Attorney's Office wrote a letter to the FBI telling them that they had complied with their request to release federal grand jury information to Alameda County District Attorney's Office; (that they all "KNEW" was the fruit of an illegal search and seizure). [See Exhibit H].

(5). In the August 18, 1988 letter, [Exhibit H], it states that immediately after the court order was signed on August 15, 1988, he telephoned the Alameda County District Attorney's Office to inform them that the secret federal grand jury material was now available to them. Which means that for the first time, Alameda County District Attorney's Office would have legally known

-26-

about the secret federal grand jury information regarding
Brad Keyes involvement.

(6). The prosecution claimed that through the telephone
records, that the FBI had obtained, pursuant to a federal grand jury
subpoena, discovered Brad Keyes, as stated on page 36 of the arrest
warrant affidavit. [Exhibit D]. And the FBI, in their Accomplishment
Report [Exhibit I], claimed credit in assisting in the planning and
effecting the arrest through their sources, (Randy Ontiveros
and Francie Koehler). If Brad Keyes was discovered in their
secret federal grand jury investigation, as they fraudulently
claim, then the Alameda County District Attorney's Office was
not notified of Brad Keyes existence until August 15, 1988. Then
how is it that the Alameda County District Attorney's Office gave
Brad Keyes a plea bargain to testify against Bonilla on April 12, 1988,
when they were not told that Brad Keyes even existed until
August 15, 1988? See the April 12, 1988 Plea Bargain as [Exhibit J].

(7). How is it, that Alameda County District Attorney's Office
was arranging telephone conversations between Brad Keyes to
Bonilla and Nichols, to be recorded on June 4, 5, and 6 of 1988, when
they were not told of his existence until August 15, 1988?
[See Exhibit K]. Why didn't the Alameda County District Attorney's
Office disclose the federal Court Order, dated August 15, 1988,
granting them grand jury secret information about the existence
of Brad Keyes? Was it because the defense would have figured
out that by giving Brad Keyes a plea bargain on April 12, 1988
would have ment that there was no federal grand jury
subpoena for Bonilla's phone records, that was used to find
Brad Keyes? It must be construed from the Alameda County,

1  District Attorney's Office, failure to disclose the August 15, 1988
2  court order, was done intentionally and deliberately, to conceal
3  the illegal search and seizure of Bonilla's phone records. To
4  willfully deprive Bonilla of his Constitutional and Statutory
5  Rights in Violation of federal laws, [18 USC § 242] and [18 USC § 241]
6  made it a federal crime for them to accomplish the same thing
7  that the FBI and the U.S. Attorney's Office had conspired to do.

8     (8) As shown by the stamp of Washoe County Sheriff's Office,
9  on the Rand Investigation Report, [Exhibit B], that states on it, that
10  it was given to the FBI; according to the Washoe County Sheriff's
11  Office reports, shown in [Exhibit C], those telephone records
12  from the Rand Investigation Report were used to locate Brad Keyes.
13  Obviously, telephone records not obtained through the legal
14  process was in violation of 18 USCS § 2703 (a), and clearly in
15  violation of the Fourth Amendment. Therefore, Washoe County
16  Sheriff's "KNEW OR SHOULD HAVE KNOWN", that using phone records
17  secured in an illegal search and seizure was in violation of the
18  Fourth Amendment to the United States Constitution.

19     (9) It became obvious, that they knew what they had done was
20  in violation of the Fourth Amendment, because when Bonilla
21  attempted in writing to them, several times, to get them to
22  admit, that the phone records that they used to find Brad
23  Keyes, had not been obtained through the required legal process,
24  as mandated by 18 USCS § 2703 (a), and the Fourth Amendment, to
25  stop Bonilla from this discovery, they filed a complaint with
26  the San Quentin State Prison authorities. [See Exhibit N], to compel
27  Bonilla from proving that the phone records used to find Brad
28  Keyes were obtained by Randy Ontiveros and Francie Koehler in an

illegal search and seizure. Which makes all of the evidence inadmissible.

(10) At the Plaintiff's second penalty phase, Bonilla, insisted before the court, for a copy of the federal grand jury subpoena for his phone records. Which created a problem for the prosecution, with them "KNOWING" that there was no such subpoena because the phone records had been secured in an illegal search and seizure. So to deceive Bonilla, they gave him a forged, federal grand jury subpoena duces tecum, dated February 19, 1988 supposedly issued for Bonilla's telephone records and served on Pacific Bell. A copy of the three page subpoena is, [Exhibit N]. However, appendix B to the subpoena, which was signed by Assistant U.S. Attorney Robert Ward, is identical to the Appendix B in connection with a subpoena duces tecum issued on October 29, 1987. A copy of the October 29, 1987 subpoena duces tecum is, [Exhibit O]. THE FORGED SIGNATURE BEING IDENTICAL ARE IMPOSSIBLE TO DO. The forged signature SHOWS THEIR INTENT TO DECEIVE the defense, as well as the court. The only changes to the two subpoenas were "fill-in-the-bank" changes. Thus, "FRAUD VITIATES EVERYTHING" [30 C. 4th 439].

(11) To put it another way, the federal grand jury subpoena, dated February 19, 1988 was merely a photocopy of the subpoena issued on October 29, 1987, with some minor changes. If the February 19, 1988 subpoena had been actually served on Pacific Bell, the ONLY purpose for issuing the subpoena would have been to conceal the fact, that the FBI had the Rand Investigation's telephone list on or before October 30, 1987. However, we now know from the FBI and the U.S. Attorney's Office, declarations, [Exhibit E], that no such subpoena was ever served on Pacific Bell Telephone Company.

(12). No discovery was ever provided to Bonilla's defense counsel at trial or any at any phase of this case to indicate that Pacific Bell was actually served with the subpoena and complied by supplying Bonilla's telephone records to the grand jury. No discovery has ever been provided to any defense counsel in the Alameda County Superior Court, Case No. H-12210-A, to indicate that the federal grand jury, assuming that they received Bonilla's telephone records by way of that subpoena, ever released those records to the FBI or the Washoe County Sheriff's Office. There has been countless repeated request made of the Alameda County District Attorney's Office to disclose this exculpatory information which they have failed/refused to disclose how the telephone records were obtain. Obviously, the phone records were not obtained by a subpoena that NEVER EXISTED. Their refusal/failure to disclose how the telephone records were obtained, is their deliberate and intentional act to conceal their violations of the Fourth Amendment, 18 USCS § 2703 (d), and Public Utility Code § 2891. To willfully deprive the Plaintiff of his Constitutional or Statutory Rights are federal crimes under 18 USC § 241 and 242.

(13). The list of Bonilla's long-distance telephone calls, prepared by Rand Investigation, [Exhibit B], where given to the FBI on or before October 30, 1987. So even if the prosecution could prove that the February 19, 1988 subpoena had been served on Pacific Bell Telephone Company, does not change the fact the telephone records were secured originally in an illegal search and seizure, and were investigated. It does not change the fact that the defendants violated Bonilla's guaranteed Fourth Amendment

Right to privacy in his paper/telephone records.

(14). When this Fourth Amendment violation was raised on appeal, the State Attorney General's Office fraudulently claimed that it was not a Fourth Amendment violation because the government did not need a subpoena to obtain Bonilla's telephone records. The State Attorney General's Office completely ignored the federal law held in 18 USC § 2702 (a) and the State of California State Law held in Customer's Right of Privacy — Public Utility Code § 2891. and the California Attorney General's Office completely ignored the fact that the Alameda County District Attorney's Office committed fraud upon the court by claiming that Bonilla's telephone records had been obtained by the FBI pursuant to a federal grand jury subpoena. The State Attorney General's Office KNEW or SHOULD HAVE KNOWN that it was a Fourth Amendment Violation but chose to conceal it by their fraudulent acts to coverup the illegal search and seizure, and thus, participated in the conspiracy to murder the Petitioner/Bonilla under the Color of Law and Authority.

(15). The federal grand jury subpoena was never entered on the court docket as an exhibit. Thus, pursuant to the Evidence Code § 403, NONE of the proffered evidence of the federal grand jury subpoena is admissible.

Section 15

From what the Petitioner submitted, in his appeal, as shown above, to the California Supreme Court in Case No. S-129612, (2004), he was obviously invoking the protection of his guaranteed Fourth Amendment Right to be secured in his telephone records against the illegal, unreasonable, and unlawful search and seizure of his telephone records. Thus, it must be construed that the California Supreme Court judges had to know, or should have known, that the fruit from the poisonous tree/the illegal search and seizure was inadmissible. The Judges, especially Judges in the highest court in the State, had to KNOW that the government having secured the telephone records in an illegal/ unlawful search and seizure was in violation of the Fourth Amendment, 18 USC § 2702 (a), and "Customer Right to Privacy," (Public Utility Code § 2891), in their telephone records.

Section 16

Judges on the bench of the highest court in the State, are considered professionals and are held to a higher standard. Especially when it is their job, and sworn DUTY, to administer the laws enacted by the State and Federal Legislature. How much clearer can the State Legislature be, when the statute § 2891, is followed in every law book, by their declaration declaring that the protection of the "CUSTOMER's RIGHT TO PRIVACY," in their telephone records is of PARAMOUNT STATE CONCERN and to this end, has enacted § 2891.

Section 17

I have never seen another statute in the law books that is followed by such a declaration, by the State Legislature declaring a person's rights. How much more emphasis could the Legislature have made, to emphasis on the Judges, the importance of administering and enforcing the protection of this right, than to put it in their declaration. Therefore, it must be construed, that the California Supreme Court Judges have maliciously and corruptly, in an underground policy of attainder, to deprive the Petitioner of his guaranteed 4th Amendment Constitutional Right to Privacy in his telephone records, as Congress has enacted, in a purposeful act of accessory to aid and abet in the conspiracy to conceal the illegal search and seizure of the Petitioner's telephone records.

Section 18

The California Supreme Court Judges have acted so crass as to establish that they embarked on it knowingly or recklessly has subjected them to personal liability. [633 = 21844]. They are not authorized to create or change laws enacted by the State Legislature. Their failure to follow and properly administer the law, as the highest court in the State, has led the other state judges to follow suit to accomplish the same. Thus, they have created a Star Chamber with an underground policy of attainder to deny innocent prisoner's, like the Petitioner, of their guaranteed Constitutional Rights to due process, equal protection of the law, and meaningful access to the court. If I am wrong, simply prove that the subpoena was served on Pacific Bell and it was entered on the court docket as an exhibit.

Section 19

- 33 -

the Court held in Dennis v Sparks, [449 US 24 n4], that
a private party involved in a conspiracy to deny someone of
their Constitutional Civil Rights, even though not an official
of the State, is still liable under the law. Private persons,
jointly engaged with state officials in the prohibited
action are acting "under color" of law for purposes of the
statute. To act "under color" of law does not require that
the accused be an official of the State. It is enough that
he is a willful participant in joint activity with the State or
its agents. As stated in the November 30, 1987 Rand Investigation
letter and list of Petitioner's phone records, it proves that Randy
Ontiveros and Francie Koehler of Rand Investigation were engaged
with the FBI, by providing them with their illegally
obtained phone records of the Petitioner Steven Wayne Bonilla.

Section 20

Pursuant to the Court's holdings in MacMillian v Griffin,
[99 Cal. App. 2d 523 n8], if the parties admit to evidence that
shows a lack of jurisdiction, it is then established that
the judgment is void as effectively as though shown by
the record; and whenever such fact is brought to the
attention of the court, it is the duty of the court to
so declare as a matter of law.

(1). Randy Ontiveros and Francie Koehler "ADMITTED"
that they illegally and unlawfully paid a bribe to
obtain the Petitioner's telephone records from an
employee at the telephone company. Which they gave
to the FBI to be engaged in the investigation. Which
was a Fourth Amendment violation and the fruit,

thereof, inadmissible. Therefore, the court lacked
subject matter jurisdiction.

(2). The Federal Bureau of Investigation, (FBI), and the United
States Attorney's Office "ADMITTED", under a federal court order,
in Case No. C-02-0636 MHP, that the federal grand jury subpoena
for the Petitioner's phone records, from which all of the
evidence, thereof, in the Alameda County Superior Court,
Case No. H-12210-A, against the Petitioner, Steven Wayne Bonilla,
NEVER EXISTED, NOR WAS IT EVER SERVED. Which was also
presented to the court(s) by the Petitioner. [See Exhibit E].

(3). The State Attorney General "ADMITTED" in her August 8, 2012,
letter to the Petitioner, [See Exhibit E], that the federal grand
subpoena WAS NEVER MADE A PART OF THE COURT DOCKET AS AN EXHIBIT.
Thus, pursuant to Cal. Evidence Code, Rule 403, the proffered evidence
of the subpoena, that was not entered on the court docket as an
exhibit, is inadmissible. Which was also presented to the court
by the Petitioner, and is also supported by the record.

These "ADMISSIONS" placed a DUTY on the California Supreme Court,
and all reviewing courts, to declare the Alameda County Superior Court,
judgment null and void, in Case No. H-12210-A, as a matter of law,
pursuant to the Court's holdings in [99 Cal. App. 2d 523 n. 8; FRCP 12 (h)(3)].

Section 21

Where there is clearly no jurisdiction over the subject matter,
because the UNLAWFUL SEARCH TAINTED ALL OF THE EVIDENCE, any authority
exercised by the California Supreme Court, or any reviewing Court is a
USURPED AUTHORITY, and for the exercise of such authority, when the
UNLAWFUL SEARCH IS KNOWN TO THE JUDGE, NO EXCUSE IS PERMISSIBLE,
as a matter of law, pursuant to the Court's holdings in [80 US 335].

## Section VII

## Dispute Resolution Agreement

The Dispute Resolution agreement was sent to the participants in the conspiracy to murder the Plaintiff, Steven Wayne Bonilla, under the color of Law and under the color of authority, by concealing the fact that Bonilla's phone records for (408) 446-3850 had been obtained in an illegal search and seizure. Thus, depriving Steven Bonilla of his Right to due process, equal protection of the law, meaningfull access to the Court, and his guaranteed Constitutional Right against unreasonable searches and seizures. Because of the large number of government agents involved in the conspiracy the Dispute Resolution Agreement contained the term: "notice to the principal was notice to the agents". And "notice to the agent was notice to the principals". Therefore, when they signed for the Dispute Resolution Agreement, [See Exhibit P], all participants in the conspiracy were legally notified, and thus, they have all acquiesced to the damages stated in the Dispute Resolution Agreemen, as shown in [Exhibit Q].

Pursuant to the courts holdings in [294 F. 3d 1104], where circumstances or previous course of dealing between the parties places the offeree under a duty to act or be bound, his silence or inactivity will constitute his assent. Whereby the defendants have assented to the damages.

The Plaintiff is indigent and has submitted a waiver for all court fees. Therefore, requesting the court to serve the complaint and any other notice to be served on the defendants by Court order.

## Relief Sought

(1). For the court to enter a Default judgment against the defendants for the specified amount stated in [Exhibit Q], to be calculated, as mandated by Rule 55 of the Federal Rules of Civil Procedure. Because the defendants violation of the 4th Amendment has been shown by, this affidavit, and can not be contradicted by showing that the federal grand jury subpoena was served on Pacific Bell Telephone Company.

(2). To declare the Alameda County, Superior Court Case Number H-12210-A void, or order the defendants to declare the judgment void.

(3). To order the innocent Petitioner, who is innocent of all charges, Steven Wayne Bonilla's immediate release or order defendants to do so.

(4). To call for a proper investigation into all these actors / agents who participated in violating the 4th Amendment; 18 USC §242-"Deprivation of Rights Under Color of Law and Authority"; 18 USC §241-"Conspiracy Against Rights"; Penal Code §182(a)(1)-"Conspiracy to Murder Under the Color of Law and Authority."

(5). For this Honorable Court to grant any and all relief that the court feels just, fair, and necessary for violating my guaranteed Constitutional Rights under Color of Law/Authority.

## Verification

I declare under penalty of perjury that the foregoing is true and correct, including the exhibits, pursuant to 28 USC § 1746 on 9-12-20.

Respectfully Submitted
Steven Bonilla

*EXHIBIT A*

5.      As part of their investigation, Randy Ontiverous obtained Steven Bonilla's long distance telephone records from a private individual, or "source," who worked at Pacific Bell telephone, Bonilla's long distance telephone carrier.  Randy Ontiveros obtained Bonilla's telephone records without legal process and with the knowledge or consent of Steven Bonilla.  . He paid approximately $200 in cash for Bonilla's records. Randy Ontiverous and Francie Koehler then prepared a list on Rand Investigations stationary of long distance telephone calls made from or charged to Bonilla's home telephone number.  A copy of that list is Exhibit 21.  The list sets forth long distance calls made from or billed to Bonilla's home telephone from September 29  to October 27, 1987.  This listed indicated that on October 10, 1987, Bonilla placed a long distance call to telephone number 602-994-8043, which is in Scottsdale, Arizona.  The list also indicated that on October 4, 1987, Bonilla placed a call to 702-738-8417 which was the home phone number for Brad Keyes in Elko, Nevada.  The list of long distance telephone calls prepared by Randy Ontiveros was disseminated to law enforcement as it is clearly stamped "Washoe County Sheriff's Office" on the front.

In addition to the list of long distance telephone calls described above, it appears that Randy Ontiveros gave the FBI a copy of Bonilla's actual long distance telephone records for the thirty day period of August 9 through September 8, 19887.  A copy of these records is Exhibit 22.  These telephone record show a call from Bonilla's residence to La Jolla, California, telephone number 619-581-1210 on August 30 and September 1, 1987.

The list of Bonilla's long-distance telephone calls prepared by Randy Ontiveros (Exhibit 21) and Bonillas telephone records (Exhibit 22) were given to the FBI on or *before October 30, 1987*                    49

EXHIBIT B



# RAND INVESTIGATIONS

*"YOUR BUSINESS IS OUR BUSINESS"*
State License Number AA008915

November 3, 1987

THIS RECORD MAY NOT BE DISCLOSED
EXCEPT IN CASE...
ACC...

DATE:    WASHOE COUNTY SHERIFF'S OFFICE

Susan Harris
3158 Blackhawk Meadow Drive
Danville, CA

RE: JERRY HARRIS

Dear Susie:

The following is a compilation of biographical information,
friends, business acquaintances of your husband, Jerry Harris. A
copy will be provided to Duke Dietrich, Federal Bureau of
Investigation and a copy will be maintained in Rand Investiga-
tions files. This information will be updated as needed.

| | |
|---|---|
| MISSING PERSON: | JERRY LEE HARRIS    AKA   Jerry Hannah |
| | Harry Hodges |
| | Jerry Hodges |

LAST SEEN:    Tuesday, October 20, 1987
between 8:51-9:00 PM in Pleasanton/Dublin Area
driving yellow Mercedes 380SL/2dr with soft brown
convertible top, CA 2AIG062.   Talked to wife and
brother, Sandy between 8:30-8:50 on cellular phone
while en route to Pleasanton to meet friend, Steve
Bonilla and look at an office building.   Told wife
and business associate, Gilbert Konqui  that he
would meet  Gilbert Konqui  and three investors at
Hotrod/Fremont after looked  at  Pleasanton build-
ing.

Has  brief  case  with  various  legal  papers.
Cellular phone in car.

Prior to going to Pleasanton, Jerry Harris met
with Steve Bonilla at the following bar:

PAGE 1 OF 1

RE:  JERRY HARRIS/MISSING PERSON

TELEPHONE INFORMATION:  (Steve Bonilla, 10200 Miller Avenue,
Apt. 411, Cupertino, CA)

Calls billed to (408) 446-3850

9-29-87 DD    (503) 482-5144

10-1-87       (602) 962-3836 FROM (619) 514-9569 CREDIT CARD
              + FROM # AT SAN DIEGO AIRPORT

10-2-87       (602) 962-3836 FROM (702) 738-9990 CREDIT CARD

10-3-87       (602) 962-3836 FROM (303) 337-0206 CREDIT CARD

10-4-87       (602) 962-3836 FROM (303) 337-0206 CREDIT CARD

10-4-87       (602) 962-3936 FROM (303) 337-0206 CREDIT CARD

10-4-87       (213) 542-4758 FROM (303) 337-0206 CREDIT CARD

10-4-87 DD    (702) 738-8417  *Brad Keyes*

10-6-87       (602) 962-3836 FROM (702) 323-9223 CREDIT CARD

10-8-87 DD    (602) 962-3836

10-10-87DD    (602) 994-8043

10-13-87DD    (916) 541-2240  TAHOE SEASONS RESORT

10-19-87DD    (213) 542-4758  MARY ANN BONILLA

10-25-87DD    (213) 542-4758  MARY ANN BONILLA

10-27-87DD    (213) 542-4758  MARY ANN BONILLA

THIS RECORD MAY NOT BE DISSEMINATED EXTERNAL
EXCEPT UNDER EXPRESS AUTHORITY OF LAW OR IN ...
...
REL TO: ...
DATE:    WASHOE COUNTY SHERIFF'S OFFICE



RAND INVESTIGATIONS
License #AA008915

EXHIBIT C



```
INBOX.39 (#10519)

TEXT:

VZCZCSFO082

PP HQ LA PX PD SD SE AQ LV SC

DE SF #0002 3031847

ZNR UUUUU

P 301953Z OCT 87    ← OCTOBER 30, 1987

FM SAN FRANCISCO (7-1463) (P)

TO ACTING DIRECTOR (PRIORITY)

ALBUQUERQUE (PRIORITY)

LOS ANGELES (PRIORITY)

LAS VEGAS (PRIORITY)

PHOENIX (PRIORITY)

PORTLAND (PRIORITY)

SACRAMENTO (PRIORITY)

SAN DIEGO (PRIORITY)

SEATTLE (PRIORITY)

BT

UNCLAS

UNSUB; JERRY LEE HARRIS - VICTIM; POSSIBLE KIDNAPPING.

     DUE TO NATURE OF OFFENSE, CONSIDER ARMED AND DANGEROUS.

     RE SFTELS TO BU, 10/26/87 & 10/28/87, AND PHOENIX TELTYPE TO

SF, 10/29/87.
```

b7C

PAGE TWO DE SF 0002 UNCLAS

TO DATE, NO INFO HAS BEEN RECEIVED CONCERNING WHEREABOUTS OF VICTIM OR HIS MISSING MERCEDES-BENZ VEHICLE, NOR HAS ANY CERTAIN MOTIVE FOR VICTIM'S DISAPPEARANCE BEEN ASCERTAINED.  HOWEVER, DESPITE CLAIMS TO THE CONTRARY BY VICTIM'S FAMILY, VICTIM WAS UNDER SOME FINANCIAL DURESS DUE TO CASH FLOW PROBLEMS.

███████████ BARITZ CLUB, CUPERTINO, CALIF., WHICH IS OWNED BY        b7C -3
VICTIM, INDICATED 3 MONTHS AGO HELL'S ANGEL TYPE CAME INTO CLUB LOOKING FOR VICTIM AND CLAIMED VICTIM OWED HIM MONEY.

VICTIM'S FAMILY CONTINUES TO DENY VICTIM INVOLVED IN NARCOTICS OR HAS ANY ASSOCIATION WITH "UNSAVORY" INDIVIDUALS.

SUSPECT STEVEN WAYNE BONILLA REMAINS UNCOOPERATIVE AND HAS FAILED TO MAKE HIMSELF AVAILABLE FOR FURTHER INTERVIEW.

██████████████████ VICTIM'S FAMILY HAS DETERMINED THAT BONILLA HAS RECENTLY, SPECIFIC DATES UNKNOWN, MADE FOLLOWING TELEPHONE CALLS FROM HIS RESIDENCE PHONE # OF 408-446-3850:

████████████████████████████████████████████████        b7C -2
████████████████████████████████████████████████

IT APPEARS THAT THE TWO SACRAMENTO CALLS MAY HAVE BEEN MISDIALED NUMBERS.

SF HAS ISSUED SUBPOENA FOR TELEPHONE CALLS MADE FROM

PAGE THREE DE SF 0002 UNCLAS

BONILLIA'S CELLULAR PHONE WHICH HE HAD WITH HIM IN BAR AND IN CAR

THE NIGHT OF VICTIM'S DISAPPEARANCE.

LEADS:

LAS VEGAS AT LAS VEGAS, NEVADA:  WILL CONDUCT APPROPRIATE

DISCREET INVESTIGATION RE TEL. ▨▨▨▨▨▨          b7C -2

PHOENIX AT PHOENIX, ARIZONA:  WILL CONDUCT DISCREET

INVESTIGATION RE TEL. ▨▨▨▨▨▨ WILL ALSO REVIEW DEA FILE  b7C -2

RE BONILLA'S ASSOCIATES, ▨▨▨▨▨▨ AND WILLIAM WINFORD

NICHOLAS.

SACRAMENTO AT SACRAMENTO, CALIF.:  CONDUCT APPROPRIATE

DISCREET INVESTIGATION RE TEL. ▨▨▨▨▨▨▨▨▨          b7C -2

SAN DIEGO AT SAN DIEGO, CALIF.:  WILL CONDUCT APPROPRIATE

DISCREET INVESTIGATION RE TEL. ▨▨▨▨▨          b7C -2

ARMED AND DANGEROUS.

BT

#0002

NNNN

FBI0000012

EXHIBIT D

Agent Smith provided affiant with information concerning phone tolls for the period of June, 1987, through January, 1988, for telephone numbers 408-725-8079 and 408-446-3850.   Agent Smith indicated that these toll records were obtained pursuant to federal grand jury subpoena.   Affiant checked the Pacific Bell directory for the Cupertino area and learned that both phone numbers are in the name of Steven Bonilla although no address is given with that information.   (Refer to Exhibit K (2 pages) attached hereto.)   During that period the phone was in the name of Steven Bonilla at 10200 Miller Avenue, Cupertino, initially and then later to the same person at 10359 Leola Court #2, Cupertino.   408-446-3850 is shown as having "touchtone, commstar, and calling waiting features, while 408-725-8079 is shown as having touchtone, commstar, and call forwarding features.

Phone records obtained for Bonilla's phone (408) 446-3850 show that the following calls were placed:

October 4, 1987, at 8:45 p.m., a 3 minute phone call to Elko, Nevada, (702) 738-8417 (Brad Keyes' home phone), from Silt, Colorado, using a calling card to charge the call to the phone.

Steven Bonilla later admitted in a phone conversation tape recorded and monitored with the consent of Brad Keyes that he had called Keyes from Colorado.

Affiant was advised by FBI Agent Gerald Diedrich about toll records for Cellular One telephone number 408-221-2632.   These records were obtained by the FBI under a Federal Grand Jury subpoena.   Cellular One records therein

*EXHIBIT E*

1   SCOTT N. SCHOOLS (SCBN 9990)
    United States Attorney
2   JOANN M. SWANSON (SBN 88143)
    Chief, Civil Division
3   ABRAHAM A. SIMMONS (SBN 146400)
    Assistant United States Attorney
4
        450 Golden Gate Avenue, 9th Floor
5       San Francisco, California 94102-3495
        Telephone:   (415) 436-7264
6       Facsimile:   (415) 436-6748
        Email:       abraham.simmons@usdoj.gov
7
    Attorneys for Federal Defendants
8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
                       SAN FRANCISCO DIVISION
11
    STEVEN W. BONILLA,                 )    No. C 02-0636 MHP (PR)
12                                     )
                    Plaintiff,         )
13                                     )
                                       )    DECLARATION OF DAVID M. HARDY
         v.                            )    WITH EXHIBITS A-V ATTACHED
14                                     )
    UNITED STATES DEPARTMENT OF        )
15  JUSTICE; UNITED STATES DISTRICT    )
    ATTORNEY FOR SAN FRANCISCO,        )
16                                     )
                    Defendants.        )
17                                     )

18

19

20

21

22

23

24

25

26

27

28

The Court has ordered defendant "to produce any and all documents within its possession indicating the following:"

> 1) Whether the February 1988 subpoena, a copy of which is attached as Exhibit A to plaintiff's Motion was actually served on Pacific Bell, and if so, by whom and when;
> 2) What documents, if any, were produced by Pacific Bell in response to the subpoena;
> 3) When those documents were produced;
> 4) To whom those documents were produced;
> 5) To whom those documents were then disseminated.

(29)  Following issuance of the Court's Order, the FBI began a series of efforts to comply with the Order, and in so doing undertook the following steps, with the following results:

(a) The FBI searched through all of the documents which had previously been scanned in to its FOIPA Document Processing System and processed in response to FOIPA Nos. 922492, 952810 and No. 926721.

RESULT: The FBI was unable to locate the requested February 1988 grand jury subpoena to Pacific Bell among its investigative files – nor any other grand jury subpoena to Pacific Bell with a February 1988 date.

(30)  The net result of the FBI's efforts to date is that it is unable to respond to any part of the Court's April 26, 2007 Order, since the FBI's investigative files do not contain either a February 1988 grand jury subpoena or documents produced in response to that subpoena.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through V attached hereto are true and correct copies.

Executed this 9th day of May, 2007.


DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

1  SCOTT N. SCHOOLS (SCBN 9990)
   United States Attorney
2
   JOANNE SWANSON (SBN 88143)
3  Chief, Civil Division

4  ABRAHAM A. SIMMONS (SBN 146400)
   Assistant United States Attorney
5
      450 Golden Gate Avenue, Box 36055
6     San Francisco, California 94102
      Telephone: (415) 436-7200
7     Facsimile: (415) 436-7234
      abraham.simmons@usdoj.gov
8
   Attorneys for Federal Defendants
9

10                UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                  SAN FRANCISCO DIVISION

13
   STEVEN W. BONILLA,                    )    No. C 02-0636 MHP
14                                        )
            Plaintiff,                    )    DECLARATION OF AUSA TIMOTHY P.
15                                        )    CRUDO
       v.                                 )
16                                        )
                                          )
17  UNITED STATES DEPARTMENT OF           )
    JUSTICE; UNITED STATES DISTRICT       )
18  ATTORNEY FOR SAN FRANCISCO,           )
                                          )
19          Defendants.                   )

20

21         I, Timothy P. Crudo, declare as follows:

22         1.    I am an Assistant United States Attorney for the Northern District of California and

23  am admitted to practice in the state of California and before this Court. I am currently one of the

24  AUSA Grand Jury Coordinators in the United States Attorney's Office (the "Office") for this

25  district and am authorized to make this declaration. I make this declaration of my own personal

26  knowledge, and, where indicated, upon information and belief. If called as a witness, I could and

27  would testify competently to the facts set forth in this declaration.

28  CRUDO DECLARATION
    CASE NO. C 02-0636 MHP

2.    I have reviewed the Court's May 31, 2007 Modification of Order Re Motion for Release of Grand Jury Materials ("Order") and make this declaration in response to that Order.

3.    In order to respond as directed by the Order, I have spoken with the Office's District Records Manager, non-attorney Grand Jury Coordinator, and Deputy District Office Security Manager about the Office's record-keeping system and the efforts of the Office to obtain the documents as directed by the Order. I informed them of the Order and requested that they determine where any responsive documents might reasonably be located and conduct a search for such documents. I have also spoken with the Assistant United States Attorney in charge of this matter, who informed me of his communications with the state and federal prosecutors involved in the underlying investigation, as well as others, in an effort to obtain the documents as directed by the Order.

4.    Based upon my communications with the individuals indicated in Paragraph 3, it is my belief that the Office has conducted a thorough and diligent search, reasonable under the circumstances, for the documents as directed by the Order. I have provided all documents responsive to the Order to one of the Assistant United States Attorneys assigned to this matter.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 14th day of September, 2007, at San Francisco, California.

Timothy P. Crudo

CRUDO DECLARATION
CASE NO. C 02-0636 MHP

2

*KAMALA D. HARRIS*
*Attorney General*

*State of California*
**DEPARTMENT OF JUSTICE**



455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA 94102-7004

Public: (800) 952-5225

August 8, 2012

Steven Bonilla (J-48500)
San Quentin State Prison
San Quentin, CA 94964

RE:    Request for Records Pursuant to the California Public Records Act

Dear Mr. Bonilla:

On July 17, 2012, you requested pursuant to the Public Records Act a copy of the Attorney General's "files" regarding your case, Alameda County Superior Court Case No. H-12210. On July 26, 2012, I requested that you provide greater specificity of the documents you seek given that we have thousands of pages of documents which relate to this case.

In a letter dated July 27, 2012 (received by our office on August 2, 2012), you specified the following: (1) "[D]oes the government have any documents that generated the federal grand jury subpoena, issued February 19, 1988 … and/or prove that an authentic, genuine, original ever existed"; (2) "[D]oes the government have any proof or documentation that would prove that the prosecutor did not put on false testimony that was based on the victim having obtained a drawn liquor license that never existed."

The California Attorney General's Office has no documents that are responsive to your request.   Our office possesses only copies of documents that were part of the state trial record in Alameda County or which have been filed in court subsequent to your trial. The federal grand jury subpoena and the liquor license you refer to were not made part of the state trial record.   This response addresses only documents in the possession of the California Attorney General and should not be construed as a response on behalf of any other government agency.

Sincerely,

GERALD A. ENGLER
Senior Assistant Attorney General

For    KAMALA D. HARRIS
Attorney General

*EXHIBIT F*



U.S. Department of Justice

Federal Bureau of Investigation

In Reply, Please Refer to
File No.  SF 7-1460

450 Golden Gate Avenue
Box 36015
San Francisco, California  94102

March 31, 1988

Mr. Joseph P. Russoniello
United States Attorney
Northern District of California
450 Golden Gate Avenue
Box 36055
San Francisco, California  94102

Attn:  Mr. Floy Dawson
       Assistant U.S. Attorney

Re: STEVEN BONILLA,
    also known as;
    ███████████████████
    also known as;
    BRADLEY GEORGE KEYES,
    also known as;
    JERRY LEE HARRIS (deceased) -
    VICTIM;.
    POSSIBLE KIDNAPPING

Dear Mr. Russoniello:

    During the course of captioned investigation, a
Federal Grand Jury subpoena duces tecum was obtained for telephone
toll records pertaining to telephone numbers (408) 446-3850
and (408) 725-8079, telephones subscribed to by Steven Wayne
Bonilla.  Toll records, including the month of October, 1987, were
obtained as a result of the Federal Grand Jury subpoena.

    As you are aware, victim Jerry Lee Harris disappeared on
the night of October 20, 1987, and his whereabouts remained unknown
until January 10, 1988, when an unidentified body was located
in a remote desert area near Pyramid Lake, Nevada.  The body was
subsequently identified as victim Jerry Lee Harris.

    Investigation conducted by the Washoe County Nevada
Sheriff's Department and the Federal Bureau of Investigation (FBI)
has recently developed information.indicating that Jerry Lee
Harris was murdered at Pleasanton, California on the night of

October 20, 1987, by captioned subjects and his body was
subsequently transported to the Pyramid Lake area of Nevada
where it was buried by subjects ███████ and Keyes. Inasmuch
as the murder of Harris occurred at Pleasanton, California,
Washoe County Nevada authorities have turned over the results
of their investigation to the Alameda County District Attorney's
Office for further investigation.

Subject Bradley George Keyes has been interviewed by
the FBI and Washoe County Nevada authorities and has provided
statements incriminating himself and the other subjects in this
matter. A review of toll records for telephones belonging to
Steven Wayne Bonilla reflect information that corroborates
portions of the statement provided by Bradley George Keyes.

It is requested that the following individuals be
added to the list of names of persons authorized access to the
telephone toll records:

1.       John J. Whitson, Inspector, District Attorney's Office,
         Alameda County California.

2.       John Goodfellow, Assistant District Attorney,
         Alameda County California.

3.       Gary L. Tollefson, Sergeant, Pleasanton California
         Police Department.

4.       Mark W. Allen, Detective, Pleasanton California Police
         Department.

It is further requested that the names of Special Agents
Thomas P. Weston and Quentin L. Smith of the San Jose Resident
Agency of the FBI also be included on the list of investigators
authorized access to these toll records. Captioned matter has
been reassigned to Agent Thomas P. Weston of the San Jose Resident
Agency. Special Agent Quentin L. Smith is conducting a separate
but related RICO investigation in which Steven Wayne Bonilla is
named as a subject.

Your assistance in this matter is appreciated.

Sincerely

RICHARD W. HELD
Special Agent in Charge

By:  WILLIAM E. SMITH
Supervisory Special Agent

U.S. Department of Justice



Federal Bureau of Investigation

In Reply, Please Refer to
File No.

Post Office Box 36015
450 Golden Gate Avenue
San Francisco, California 94102

July 13, 1988

Mr. Joseph P. Russoniello
United States Attorney
Northern District of California
450 Golden Gate Avenue
Box 36055
San Francisco, California 94102

Attn:  Mr. Floy Dawson
       Assistant U.S. Attorney

　　　　　　　　　　　　Re:  STEVEN WAYNE BONILLA,
　　　　　　　　　　　　　　　ALSO KNOWN AS;
　　　　　　　　　　　　　　　▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
　　　　　　　　　　　　　　　ALSO KNOWN AS;
　　　　　　　　　　　　　　　BRADLEY GEORGE KEYES,
　　　　　　　　　　　　　　　ALSO KNOWN AS;
　　　　　　　　　　　　　　　JERRY LEE HARRIS (DECEASED) –
　　　　　　　　　　　　　　　VICTIM;
　　　　　　　　　　　　　　　POSSIBLE KIDNAPPING

Dear Mr. Russoniello:

　　　　This letter will confirm a conversation between Special
Agent (SA) Quentin L. Smith of the San Jose Resident Agency, Federal
Bureau of Investigation (FBI) and Assistant United States Attorney
(AUSA) Floy Dawson  on July 11, 1988.

　　　　As you have previously been made aware, victim Jerry Lee
Harris disappeared under mysterious circumstances on the night of
October 20, 1987.  A possible kidnapping investigation was instituted
by the San Francisco Division of the FBI.  Harris' whereabouts
remained unknown until February, 1988.  On January 10, 1988, a
partially decomposed body was discovered in a desert region near
Pyramid Lake, Nevada.  The body contained no identification, however,
through fingerprint examination by the FBI Laroratory, this body
was determined to be that of victim Jerry Lee Harris.

　　　　Subsequent investigation by the FBI in connection with
the Washau County, Nevada Sheriff's Department and the Alameda
County District Attorney's Office, has determined that victim
Jerry Lee Harris was confronted by subjects Steven Wayne Bonilla,
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and Bradley George Keyes at an office
complex at Pleasanton, California, on the evening of October 20, 1987

Mr. Joseph Russoniello

and was murdered at that location by suffication. Thereafter, Harris' body was transported by subjects ███████ and Keyes, from Pleasanton, California to the burial site located near Pyramid Lake, Nevada where he was buried.

Washau County, Nevada Sheriff's Department has turned over results of their investigation to the Alameda County District Attorney's Office for prosecution of subjects under California State Law, inasmuch as the murder of Harris occurred at Pleasanton, California.

On July 11, 1988, AUSA Floy Dawson advised that inasmuch as Harris was killed at Pleasanton, California and thereafter transported across state lines, there is no federal kidnapping violation and that he would decline federal prosecution in this case in favor of local prosecution by the Alameda County District Attorney's Office.

Subject Bradley George Keyes has admitted his involvemnt in the murder of Harris and his participation in the burial of Harris and has been cooperating with Federal and State authorities since March 17, 1988. During the course of the Federal investigation in this matter, toll records of a telephone subscribed to by Steven Wayne Bonilla were subpoenaed via Federal Grand Jury subpoena. These toll records contain information which substantiates information provided by subject Bradley George Keyes and therefore may be key evidence that could be used by the Alameda County District Attorney's Office in prosecution of this case. This matter was discussed with AUSA Dawson, who advised that he would seek Department of Justice approval for the release of this material to the Alameda County District Attorney's Office.

Your assistance in this matter is appreciated.

Sincerely yours,

RICHARD W, HELD
Special Agent in Charge

By: WILLIAM E. SMITH
Supervisory Special Agent

EXHIBIT G

SEALED
BY COURT ORDER

JOSEPH P. RUSSONIELLO
United States Attorney

ROBERT D. WARD
Chief, Criminal Division

FLOY E. DAWSON
Assistant United States Attorney

450 Golden Gate Avenue
San Francisco, California  94102
Telephone:  (415) 556-4231

Attorneys for Plaintiff

CR 88-259 MISC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE:  GRAND JURY INVESTIGATION    )    MISC.  NO.
                                    )
                                    )    APPLICATION FOR DISCLOSURE
                                    )    OF GRAND JURY MATERIALS
                                    )    (Fed. R. Crim. P.
                                    )    6(e)(3)(C)(iv))
_____)

        Based upon the attached Declaration of Assistant United

States Attorney FLOY E. DAWSON, the United States hereby moves the

Court for an order of disclosure pursuant to Rule 6(e)(3)(C)(iv),

permitting disclosure to Assistant District Attorney John

Goodfellow and Inspector John J. Whitson of the Alameda County,

California, District Attorney's Office, and to Pleasanton,

California police officers Gary L. Tollefson, sergeant, and Mark W.

Allen, detective, of all documents and things surrendered to a

United States Grand Jury in compliance with certain subpoenas duces

tecum, to wit:  Pacific Bell Telephone (issued February 19, 1988)

and Cellular One (issued October 29, 1987).

1          This request is based upon the fact that disclosure of

2    said documents may disclose a violation of California state

3    criminal law, to wit, Penal Code Sections 207 (kidnapping); 187

4    (murder); and 182 (conspiracy).

5    DATED:                          Respectfully submitted,

6                                    JOSEPH P. RUSSONIELLO
7                                    United States Attorney

8

9                                    FLOY E. DAWSON
                                     Assistant United States Attorney

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SEALED
BY COURT ORDER

ORIGINAL
FILED

JOSEPH P. RUSSONIELLO
United States Attorney

ROBERT D. WARD
Chief, Criminal Division

FLOY E. DAWSON
Assistant United States Attorney

450 Golden Gate Avenue
San Francisco, California  94102
Telephone: (415) 556-4231

Attorneys for Plaintiff



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE:  GRAND JURY INVESTIGATION   )    MISC.  NO.
                                    )
                                    )    DECLARATION OF ASSISTANT
                                    )    UNITED STATES ATTORNEY
                                    )    FLOY E. DAWSON
                                    )    _____
                                    )
_____ )

        Floy E. Dawson, under penalty of perjury, states as

follows:

        1.  I am an Assistant United States Attorney for the

Northern District of California and am responsible for an ongoing

Grand Jury investigation involving the alleged kidnapping of one

Jerry Lee Harris.

        2.  Jerry Lee Harris disappeared from the San Francisco

area on the night of October 20, 1987.  His whereabouts remained

unknown until January 10, 1988, when his body was located in a

remote desert area near Pyramid Lake, Nevada.  Two suspects, Steven

Bonilla and Bradley George Keyes, were developed by investigation

of Washoe County, Nevada authorities and the FBI.  The investiga-

tions indicate that Harris was murdered at Pleasanton.  Authorities

of  Alameda  County  and  Pleasanton,  California  are  presently

conducting an investigation into the alleged murder.

3.  On October 29, 1987 and February 19, 1988, Grand Jury

subpoenaes were issued to Cellular One and Pacific Bell Telephone,

respectively for telephone toll information regarding telephones to

which Jerry Lee Harris subscribed.

4.  The information developed by our federal Grand Jury

investigation contains information corroborative of the involvement

of Bonilla and Keyes in the alleged murder of Jerry Lee Harris.

5.  It is requested that disclosure of the information

developed by the federal Grand Jury be permitted to Assistant

District Attorney John Goodfellow and Inspector John J. Whitson of

the  Alameda,  California,  District  Attorney's  Office,  and  to

Pleasanton, California police officers Gary L. Tollefson, sergeant,

and Mark W. Allen, detective, for the purpose of enforcing the

criminal statutes of the State of California.  The information and

documents may disclose violations of state criminal law.

I declare under penalty of perjury that the foregoing is

true and correct.

Executed this _15th_ of ~~April~~ August, 1988 at San Francisco,

California.

DATED: 8/15/88

FLOY E. CARSON
Assistant United States Attorney

DECLARATION OF ASSISTANT UNITED

I hereby certify that I  annexed
instruments is a true and correct copy
of the original on file in my office.
ATTEST
WILLIAM L. WHITTAKER
Clerk, U.S. District Court
Northern District of California

By _____
Deputy Clerk

Dated _____ AUG 15 1988 _____

ORIGINAL
FILED

AUG 15 1988

WILLIAM L. WHITTAKER
CLERK, U. S. DIST. COURT
SAN FRANCISCO

SEALED
BY COURT ORDER

CR 88-259 MISC RMEZ

AJZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE:  GRAND JURY INVESTIGATION  )    MISC.  NO.
                                  )
                                  )    O R D E R
                                  )
                                  )
_____)

        Based  upon  the  Application  of  the  United  States,
supported by the Declaration of Assistant United States Attorney
Floy E. Dawson, and pursuant to Rule 6(e)(3)(C)(iv) of the Federal
Rules of Criminal Procedure, IT IS HEREBY ORDERED that documents
and things surrendered to the United States Grand Jury pursuant to
subpoenas duces tecum issued to Pacific Bell Telephone (issued
February 19, 1988), and Cellular One (issued October 29, 1987) may
be disclosed to Assistant District Attorney John Goodfellow and
Inspector  John  J.  Whitson  of  the  Alameda  County,  California
District Attorney's Office, and to Pleasanton, California, police
officers Gary L. Tollefson, sergeant, and Mark W. Allen, detective,
to be used for the purpose of enforcing the criminal laws of the
State of California.

1

        IT   IS   FURTHER   ORDERED   that   all   Declarations,

2

Applications, and Orders in this captioned case be filed under seal

3

until further order of the Court.

4

DATED: Aug 15, 1988

5

6

7
                                    _____
                                    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER

*EXHIBIT H*



U.S. Department of Justice

*United States Attorney*
*Northern District of California*

---

16th Floor Federal Building, Box 36055        Branch Office:
450 Golden Gate Avenue                        280 S. First Street, Room 371
San Francisco, California 94102               San Jose, California 95113
(415) 556-1126                                (408) 291-7221

August 18, 1988

Quentin Smith
Special Agent
Federal Bureau of Investigation
280 South First Street, Suite 2112
San Jose, CA  95113

    Re:  Steven Wayne Bonilla

Dear Quentin:

    On August 15, 1988, we finally received authority from DOJ to request a court to authorize disclosure of Grand Jury material gathered in the investigation of the above-named individual to local authorities.  On that date, our request was filed and Judge Alfonso Zirpoli signed the order authorizing such disclosure.  Copies of the requesting papers and the order are enclosed.

    Immediately after the order was signed, I telephoned John Goodfellow, the Assistant District Attorney and told him the material was available.  I also notified your supervisor.

    I am sorry for the delay in getting this accomplished.  I blame DOJ since our request to them was timely and expeditious handling was sought.  I suppose these things do take time.

    Your efforts and cooperation in this matter are appreciated.

          Very truly yours,

          JOSEPH P. RUSSONIELLO
          United States Attorney

          FLOY E. DAWSON
          Deputy Chief, Criminal Division

FED:pl

Enclosures

*EXHIBIT I*

FD-515 (Rev. 2-24-86)
ACCOMPLISHMENT REPORT
(Effective 10/1/86)
(Submit within 30 days from date of accomplishment)

TO:      DIRECTOR, PASS
                        SRC'D
FROM:    SAC, SAN FRANCISCO

SUBJECT:

STEVEN WAYNE BONILLA;
JERRY LEE HARRIS (D) -
VICTIM;
RICO - MURDER;
OO:SF

Date 9/20/88

Bureau File Number

SF183A-1548
Field Office File Number

0662
Squad or RA Number

Agent's Social Security No.

Pleasonton, Ca. P.

☐ X If a joint operation with:
(identity of other agency)

☐ X if case involves
corruption of a public
official (Federal, State or
Local).

**Investigative Assistance or Techniques Used**

Were any of the investigative assistance or techniques listed below used in connection with accomplishment being claimed?  ☐ No  ☐ Yes - If Yes, use each used as follows:

1 = Used, but did not help    3 = Helped, substantially
2 = Helped, but only minimally  4 = Absolutely essential

| | Rating | | Rating | | Rating | | Rating |
|---|---|---|---|---|---|---|---|
| 1. Accig Tech Assistance | | 8. Eng. Sect. Tape Exams | | 15. Photographic Coverage | | 22. Telephone Toll Recs | |
| 2. Aircraft Assistance | | 9. Hypnosis Assistance | | 16. Polygraph Assistance | | 23. UCO Group I | |
| 3. Computer Assistance | | 10. Ident Div Assistance | | 17. Search Warrant Executed | | 24. UCO Group II | |
| 4. Consensual Monitoring | | 11. Informant Information | | 18. Show Money Usage | | 25. UC Other | |
| 5. ELSUR - FISC | | 12. Lab Div Exams | | 19. Laborat. Sqd. (SOG) Asst | | 26. NCAVC/ VI-CAP | |
| 6. ELSUR - Title III | | 13. Lab Div Field Support | | 20. SWAT Team Action | | 27. Visual Invest Analyses (VIA) | |
| 7. Eng. Sect. Field Support | | 14. Pen Registers | | 21. Tech. Agt. or Tech Equip | | | |

| A. Preliminary Judicial Process (Number of subjects) | Complaints | Informations | Indictments | D. Recoveries, Restitutions, or Potential Economic Loss Prevented (PELP) | | | | (Explain valuation in remarks) |
|---|---|---|---|---|---|---|---|---|
| | | | | Property Type Code* | Recoveries | Restitutions | PELP Type Code* | Potential Economic Loss Prevented |
| B. Arrests, Locates, Sentences or Summons Served (No. of Subj) | | | | | $ | $ | $ | |

**Subject Priority***

| | A | B | C | | | | | |
|---|---|---|---|---|---|---|---|---|
| FBI Arrests · | | | | Subpoenas Served | $ | $ | $ | |
| FBI Locates · | | | | Criminal Summons | $ | $ | $ | |
| Local Arrests · | 1 | | | Local Crim. Summons | | | | |

FBI Subj. Resisted ___ ; Armed ___

| C. Release of Hostages or Children Located: (Number of Hostages or Children Located) | | E. Civil Matters | | Government Defendant | Government Plaintiff |
|---|---|---|---|---|---|
| Hostages Held By Terrorists | All Other Hostage Situations | · Amount of Suit | | $ | $ |
| Missing or Kidnaped Children Located | | · Settlement or Award | | | |

Enter AFA Payment Here

No. of Subjects ___ Acquitted ___ Dismissed ___

| F. Final Judicial Process:  Judicial District | | | | | | |
|---|---|---|---|---|---|---|
| | District | State | Conviction or Pretrial Div. Date | Sentence Data | | |

| Subject 1 | Subject Description Code* — | | Subject 3 | Subject Description Code* — | |
|---|---|---|---|---|---|

(Subject 1, Subject 2, Subject 3, Subject 4 sentencing grids — Felony/Misdemeanor, Conviction: Title/Section/Counts, Combined Sentence: In-Jail Yrs/Mos, Suspended Yrs/Mos, Probation Yrs/Mos; Plea/Trial/Pretrial Diversion; Total Fines; "Add consecutive sentences together. Enter longest single concurrent sentence. Do not add concurrent sentences together. Sentence 10 yrs.-8 yrs. susp. = 2 yrs. In-Jail.")

183-10662-1

Attach additional forms if reporting final judicial process on more than four subjects, and submit a final disposition for 1A-84) for each subject.

Remarks:   (For every subject reported in Sections A, B or F above, provide name, DOB, race*, sex, and POB and SSAN if available.)

STEVEN WAYNE BONILLA, 5/17/47, W, M, Ca,, 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    SEP 27 1988
Not LCN member nor associate.
San Francisco claiming local arrest since all probable cause developed to
sustain the first degree murder warrant(with special circumstances) was devel-
oped by the FBI; San Francisco located subject through sources, consentual
monitoring, and surveillances; and since San Francisco assisted in planning
and effecting the arrest.

2 - Bureau
· Field Office   (183A-1548) (66-1843)
· See notes on reverse side

EXHIBIT J

April 12, 1988

It is agreed and understood between Bradley George Keyes, his attorney Robert Hager, and Jon Goodfellow, Deputy District Attorney, County of Alameda, State of California representing the office of the District Attorney, County of Alameda, State of California:

1. That Bradley George Keyes agrees to tell the absolute truth about his involvement in the death of Jerry Lee Harris;

2. That Bradley George Keyes agrees to cooperate fully with law enforcement authorities in the continuing investigation of the death of Jerry Lee Harris;

3. That Bradley George Keyes agrees to cooperate and testify in a court of law under oath fully and truthfully about the events of the death of Jerry Lee Harris;

4. That if Bradley George Keyes testifies truthfully under oath in a court of law about the events surrounding the death of Jerry Lee Harris, he will be allowed to plead guilty to a charge of Conspiracy to Commit Murder (violation of 182 Penal Code), and to a charge of Penal Code Section 32, Accessory to Murder. It is further understood between the parties that if Bradley George Keyes is not truthful about his involvement in the death of Jerry Lee Harris or does not testify fully and truthfully about his involvement and the involvement of others in the death of Jerry Lee Harris, that this agreement is rescinded and is null and void;

   It is understood that Bradley George Keyes will plead guilty to the above-mentioned charges and will be sentenced to a maximum term of up to 3 years in State Prison. If Bradley George Keyes refuses to plead guilty to the above-mentioned charges, Conspiracy to Commit Murder, and Accessory to Murder, this agreement is rescinded and is null and void;

B.K.

Page 1 of 2

EXHIBIT      1 of 2 pages

-2-

Bradley George Keyes understands that this agreement is contingent upon his being truthful and that if he does not at anytime tell the truth from this date forward that the Alameda County District Attorney's Office makes no promises to him regarding his criminal liability for any criminal acts he may have committed, and that this agreement is rescinded and is null and void;

5. That the parties agree that if Bradley George Keyes is truthful from this day forward that any statements made by him to law enforcement authorities will not be used in a court of law against him. He understands that if he faces prosecution for his involvement in the death of Jerry Lee Harris that statements made by him to law enforcement authorites before this date can and will be used against him in a court of law. These previous statements made by Bradley George Keyes are not involved as a part of this agreement;

6. Bradley George Keyes further understands that this agreement is concerning his criminal liability for criminal acts subject to prosecution by the People of the State of California. This agreement does not involve any criminal acts that may be prosecuted by the U.S. Government by the United States Attorney's Office;

I have read and understood the above.

_Bradley George Keyes_ (signature)
Bradley George Keyes

_Robert Hager_ (signature)
Robert Hager
Attorney at Law

John J. Meehan
District Attorney
County of Alameda

By: _Jon Goodfellow_ (signature)
Jon Goodfellow
Deputy District Attorney

*EXHIBIT K*

SUPPLEMENT

PLEASANTON POLICE DEPARTMENT 0111

| 70. CODE SECTION | 71. CRIME | 72. CLASSIFICATION | | | |
|---|---|---|---|---|---|
| 187 P.C. | MURDER | | | | |

| 73. VICTIM'S NAME - LAST, FIRST, MIDDLE  (FIRM IF BUS.) | 74. ADDRESS | RESIDENCE | | BUSINESS | 75. PHONE |
|---|---|---|---|---|---|
| HARRIS, JERRY LEE | | | | | |

(S)  BONILLA, STEVE

(S)  NICHOLS, WILLIAM

(S)  KEYES, BRAD

NOTES OF OCCURRENCES AND DATES, NOT IN SEQUENTIAL ORDER

SATURDAY - 6-4-88, SUNDAY - 6-5-88, MONDAY - 6-5-88.

SGT. TOLLEFSON, D.D.A. JON GOODFELLOW AND D.A. INVESTIGATOR

JOHN WHITSON MET WITH INFORMANT BRAD KEYES IN THE

TRUCKEE AREA (CALIFORNIA), IN AN ARRANGEMENT TO RECORD

TELEPHONE CONVERSATION BETWEEN KEYES TO BONILLA AND TO

NICHOLS.

ON 6-4-88, TELEPHONE CALLS WERE MADE BY KEYES FROM

PAY PHONES # (916) 587-9900 AND (916) 587-9873. ON 6-5-88, A

PHONE CALL WAS MADE AGAIN BY KEYES, FROM (916) 587-9873.

ON 6-6-88, LT. "BERNIE" HUGHES OF THE D.A.'S OFFICE AND I

MET IN THE SPRINGTOWN AREA OF LIVERMORE FOR SURVEILLANCE

OF WILLIAM NICHOLS WHO RESIDES AT 4471 BUCKSKIN CT., LIVER-

MORE. A PRE-ARRANGED PHONE CALL WAS SCHEDULED AT 1915 HRS

BETWEEN KEYES AND NICHOLS.

ON 6-6-88 AT 1828 HRS. I WAS PARKED AT THE TEXACO

SERVICE STATION ON THE S/W CORNER OF SPRINGTOWN BLVD. AND

BLUEBELL DR., EAST OF I-580. I SAW BONILLA'S 2 TONE BROWN

| REPORTING OFFICERS | RECORDING OFFICER | TYPED BY | DATE AND TIME | ROUTED BY |
|---|---|---|---|---|
| S. Allen | S. Allen | | 6-27-88 | |

| FURTHER ACTION | | COPIES TO: | | | |
|---|---|---|---|---|---|
| | YES | | DETECTIVE | | 611 |
| | NO | | JUVENILE | | PATROL |
| | | | DIST. ATTNY. | | OTHER |
| | | | SO/P.D. | | OTHER |

| REVIEWED BY | DATE |
|---|---|
| | |

ELKO COUNTY SHERIFF'S DEPARTMENT

## CONTINUATION REPORT

CASE NO. 880690

INCIDENT CLASSIFICATION *Agency Assist 61050*    PAGE NO. 2

Being present at the scene of Harris death, information received was that investigators were in control of certain telephone numbers and that the telephone information from Reyes was needed to confirm the information that was known.

An Affidavit for Search Warrant was prepared and Search warrant issued by the Elko Township Justice of Peace Jack Ames.

I served the search warrant on 040188 and received the telephone information. On 040188 I made return of the warrant to the court.

The items received were photocopied and the originals were placed into evidence.

ATTACHMENTS
Affidavit for Search warrant
Search warrant
Return on Search warrant
photocopies of telephone records.

APPROVED BY    OFFICER'S SIGNATURE
W/S

PAGE THREE (LV 183A-1525) (UNCLAS)

b7C
b7D

ON MARCH 24, 1988, A MEETING WAS HELD AT THE WCSO

ATTENDED BY [                    ] ALAMEDA

COUNTY DISTRICT ATTORNEY'S OFFICE; [                    ]

[                    ] PLEASANTON CALIFORNIA POLICE

DEPARTMENT; [                    ]

[                    ] WCSO; [                    ]

[                    ] WCSO, FORENSIC INVESTIGATIVE SERVICES;

[                    ] AND SA'S [                    ]

[                    ] DURING THE MEETING, THE HOMICIDE INVESTIGATION

CONCERNING THE DEATH OF HARRIS WAS DISCUSSED.  IT HAS BEEN

DETERMINED THAT ALAMEDA COUNTY AND PLEASANTON POLICE

DEPARTMENT WILL COMPLETE THE INVESTIGATION.

b7C

EXHIBIT L

## WASHOE COUNTY SHERIFF'S OFFICE

### SUPPLEMENTAL OR CONTINUATION REPORT

| OF ORIGINAL REPORT | DATE OF ORIGINAL REPORT | CASE NUMBER |
|---|---|---|
| HOMICIDE | 01-10-83 | 083-1223 |
| VICTIM OR COMPLAINANT | LOCATION OF ORIGINAL OCCURRENCE | DATE AND TIME OF SUPPLEMENT |
| HARRIS, JERRY | 26 MILES NORTH OF SPARKS | 03-03-88 @ 1030 HRS. |

Additional details of offense, progress of investigation, etc.

SYNOPSIS (CONTINUED):

January 10, 1983, Jerry HARRIS'S body is then found located at State Route 445 approximately Mile Marker 29, one and half miles west of that location by an unsuspecting rock admirer.

Moreover, a teletype is then sent by WCSO to all airports along that route to specifically look for the Victim's vehicle. The Victim's vehicle is eventually found at the Sacramento Metro Airport, Lot #8. The vehicle is then towed to Rite Garage and processed by the WCSO.

On 03, 1983, phone records are supplied to Sgt. Detective James LOPEY. Contained in these records is the phone number to a Brad KEYES located in Elko, Nevada by which Detective Sgt. LOPEY and FBI Agent Eric CHRISTIANSEN (phonetic) go to that location and interview Brad KEYES. Brad KEYES then admits that he was aware of Mr. HARRIS's death due to the fact that he is familiar with William NICHOLS and Steven BONILLA; but denies that he did in fact kill Jerry HARRIS, only that he was present while Mr. HARRIS was being buried.

On 03, 1983, Sgt. LOPEY and this Writer again re-interview Brad KEYES. Brad KEYES then states to Detectives that he was in fact present during the demise of Jerry HARRIS and explains that the persons present were himself, William NICHOLS, Steven BONILLA, and the Victim. The plan is related that he is only to be there to assist the others in forcibly making Mr. HARRIS to assign over all of his business ventures to Steven BONILLA whereas Mr. KEYES would benefit by this. However, when William NICHOLS instructs Brad KEYES to grab the Victim, which he does, the Victim is then sprayed in the face with a possible chemical agent mace thus disabling the Victim. At which time, William NICHOLS strikes the Victim in the face two times. At which time, he is then carried over to the rear of William NICHOL'S vehicle and William NICHOLS then straddles the Victim on top of him grabbing a visqueen (phonetic) type drop cloth, wrapping it around the Victim's head, and using duct tape in order to suffocate the Victim. Moreover, William NICHOLS does  make the statement to Brad KEYES that, "I'm going to suffocate him."

Brad KEYES then states he has nothing further to do with the body at that point. The only assistance he did provide was to help push the body in the rear of the pickup belonging to William NICHOLS.
CONTINUED

| | This Offense is now | | | |
|---|---|---|---|---|
| Unfounded | ☐ | | | |
| Cleared by Arrest | ☐ | | | 03-03-88 |
| Cleared Otherwise | ☐ | ct 03-24-88 | BUTKO | |
| | | | INVESTIGATING OFFICER | DATE |
| Not Cleared (inactive) | ☐ | | Loney    103 | 3-27-88 |
| | | | SUPERVISOR APPROVING | DATE |

8-142 (Rev 7/85)

## WASHOE COUNTY SHERIFF'S OFFICE

3.

SUPPLEMENTAL OR CONTINUATION REPORT

| TYPE OF ORIGINAL REPORT | DATE OF ORIGINAL REPORT | CASE NUMBER |
|---|---|---|
| HOMICIDE | 01-10-88 | A88-0223 |
| VICTIM OR COMPLAINANT | LOCATION OF ORIGINAL OCCURRENCE | DATE AND TIME OF SUPPLEMENT |
| HARRIS, JERRY | DESERT AREA OFF OF PYRAMID LAKE HWY. | 04-03-88 @ 1642 HRS. |

Additional details of offense, progress of investigation, etc

### WASHOE COUNTY DISTRICT ATTORNEY'S OFFICE PERSONNEL:

1. RACHOW, Ronald C.
   Deputy District Attorney

2. GAMMICK, Richard A.
   Deputy District Attorney

3. ABERASTURI, John A.
   Chief Deputy District Attorney

### NARRATIVE:

On 03-17-88, Writer arrived in Elko, Nevada, in order to conduct interviews with Elko residents Bradley and Ray Ann KEYES. Writer was accompanied by FBI Special Agent Eric CHRISTENSEN. CHRISTENSEN had been invited to accompany Writer on the trip due to the FBI's ongoing interest in the investigation.

Writer had originally wished to contact Bradley KEYES due to the fact that Steven BONILLA had telephoned Brad KEYES' residence on or about 10-04-87. Writer had also located Brad KEYES' 1981 Work Card Application from City of Sparks, And while reviewing the application, Writer observed that KEYES had noted a 1978 DUI Arrest which had occurred in Phoenix, Arizona. The inference that KEYES at one time had possibly resided in Arizona was interesting due to the fact that a possible Suspect named William NICHOLS also was known to have resided in Phoenix, Arizona. Also, earlier information had indicated that another Suspect in the Case named Steven BONILLA had also been known to have at least visited the Phoenix, Arizona area in the past.

After arriving in Elko, Investigators made contact with Lt. Mike BETTER of the Elko County Sheriff's Office. BETTER then drove Writer and Special Agent CHRISTENSEN to the KEYES' residence located at 401 Juniper Street. Contact was then made with Mrs. Ray Ann KEYES. Mrs. KEYES then related that her husband Brad was currently at work. Investigators then requested that Mrs. KEYES accompany Investigators to the Elko County Sheriff's Office so that we could speak to her about an ongoing Homicide Investigation. Mrs. KEYES then agreed to do so.

CONTINUED

| | This Offense is now | | | |
|---|---|---|---|---|
| Unfounded ☐ | | | | |
| Cleared by Arrest ☐ | | | _signature: Lopey_ | |
| Cleared Otherwise ☐ | ct 04-04-88 | | LOPEY | 04-03-88 |
| | | | INVESTIGATING OFFICER | DATE |
| Not Cleared (Inactive) ☐ | | | | |

5-142 (Rev.7/85)

SUPERVISOR APPROVING                    DATE

WCSD Sgt. LOPEY admitted where the telephone
records came from

5480

A.   Yes.   That came from the FBI and from the

victim's wife, who we also gleened that information from.

Q.   We have heard some information during the

course of this trial relating to a telephone conversation

that Mr. Harris had with his wife which was the last

contact that she or anyone other than Mr. Bonilla was

known to have had with Mr. Harris.  Were you familiar with

that information?

A.   Yes, however, there was also another phone

call that took place that I believe was actually the last

one.  I don't think the conversation with his wife was

actually the last conversation that he had.

Q.   And that other phone call was apparently with

whom?

A.   With his brother Sandy.

Q.   Okay.  So did you talk to Sandy Harris?

A.   I did not personally, no.

Q.   Employees of yours?

A.   Yes.

Q.   And did someone from Washoe County speak with

Susan Harris?

A.   Yes.

Q.   And then did you start investigating in

cooperation with the FBI the contacts that there might

have been with Steve Bonilla in the past?

A.   Yes.

Q.   And as a result of a review of Mr. Bonilla's

telephone records you came up with the name Bradley Keyes?

EXHIBIT M

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC 128 B (8-87)

NAME and NUMBER    BONILLA, STEVEN  J-48500

On May 28, 2002, I received information from the San Quentin Investigative Services Unit that inmate Bonilla J-48500 was harassing Washoe County Assistant Sheriff James Lopey, via written correspondence. I confronted inmate Bonilla about the correspondence. Bonilla indicated he had written Assistant Sheriff Lopey on two occasions, requesting information relative to his (Bonilla's) criminal case.

I ordered inmate Bonilla to cease all contact with Assistant Sheriff Lopey. Inmate Bonilla is advised that violation of this order would result in him being subjected to administrative disciplinary proceedings for harassment. Bonilla agreed not to contact Lopey any further and to pursue the information he needed through appropriate channels. Inmate Bonilla appeared to be receptive to counseling

Original:  Central File
    cc:  Inmate
         Counselor
         Writer
DATE    May 29, 2002

J. LEE
Correctional Sergeant
East Block

INFORMATIONAL CHRONO

CSP-SQ

EXHIBIT N

APPENDIX B2

Pursuant to an investigation by the Federal Grand Jury of the Northern District of California into a suspected felony, it is requested that your company furnish on 2/26/88 all records requested pertaining to names and telephone numbers in Appendix A.

In addition, we request that you not disclose the existence of this request. Any such disclosure could impede the investigation being conducted and thereby interfere with the enforcement of the law. Thank you very much for your assistance in this matter.

DATED: February 19, 1988

JOSEPH P. RUSSONIELLO
United States Attorney

ROBERT WARD
Assistant United States Attorney
Chief, Criminal Division

Pursuant to an investigation by the Federal Grand Jury of the Northern District of California into a suspected felony, it is requested that your company furnish on November 4, 1987 all records requested pertaining to names and telephone numbers in Appendix A.

In addition, we request that you not disclose the existence of this request. Any such disclosure could impede the investigation being conducted and thereby interfere with the enforcement of the law. Thank you very much for your assistance in this matter.

DATED:

JOSEPH P. RUSSONIELLO
United States Attorney

ROBERT WARD
Assistant United States Attorney
Chief, Criminal Division

SAME

October 29, 1987

8703546

.10 (Rev. 10-82)                    SUBPOENA TO TESTIFY BEFORE GRAND JURY

| United States District Court | DISTRICT Northern District of California |
|---|---|

| | SUBPOENA FOR |
|---|---|
| Pacific Bell<br>Monte Richardson, District Section Manager<br>1155 Market Street, Suite 300<br>San Francisco, CA | ☐ Person<br>☒ Document or Object |

YOU ARE HEREBY COMMANDED to appear in the United States District Court at the location, date, and time specified below to testify before the Grand Jury in the above entitled case.

| PLACE United States Courthouse<br>450 Golden Gate Avenue<br>San Francisco, CA 94102 | COURTROOM Grand Jury |
|---|---|
| | DATE AND TIME February 26, 1988 9:30 a.m. |

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):[1]

Any and all existing records, including billing records, message unit records, and all other records and reports pertaining to the telephone number(s) in attached Appendix "A", incorporated herein by reference.

PLESE NOTE: That in accordance with the certification attached hereto as Appendix "B" and incorporated herein by reference, this request and information and records provided hereunder must be kept confidential.

IN LIEU OF THIS PERSON'S ATTENDANCE AND APPEARANCE BEFORE THE FEDERAL GRAND JURY, THE ABOVE INFORMATION MAY BE MAILED TO:
Foreman, U.S. Federal Grand Jury (T/R)
c/o P.O. Box 36055
450 Golden Gate Avenue
San Francisco, CA 94102

☐ Please see additional information on reverse

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| CLERK WILLIAM L. WHITTAKER | DATE February 19, 1988 |
|---|---|
| DEPUTY CLERK Theresa Bridge | |

This subpoena is issued on application of the United States of America by:
JOSEPH P. RUSSONIELLO
United States Attorney

NAME, ADDRESS AND PHONE NUMBER OF ASSISTANT U.S. ATTORNEY
FLOY E. DAWSON, AUSA
450 Golden Gate Avenue, Box 36055
San Francisco, CA 94102
FED:ajb (415) 556-4227

not applicable, enter "none."

## APPENDIX A

ALL OF THE FOLLOWING TELEPHONE NUMBER(S) IS/ARE IN AREA CODE <u>408</u>.

REQUEST ALL TELEPHONE TOLL RECORD INFORMATION AVAILABLE FOR

THE FOLLOWING NUMBER(S): <u>     CSR                                    </u>

TELEPHONE NUMBER

~~(408) 446-3850~~  )  ~~Telephone Toll records and Subscriber information~~
10200 Miller Ave. )  is requested for the numbers listed for the/period
Apt. 411          )  <u>June 1987</u> to the present.              billing
Cupertino, CA     )

(408) 725-8079    )

Grand JUry 87-3
8703546

FED:ajb (415) 556-4227

APPENDIX B2

Pursuant to an investigation by the Federal Grand Jury of the Northern District of California into a suspected felony, it is requested that your company furnish on 2/26/88 all records requested pertaining to names and telephone numbers in Appendix A.

In addition, we request that you not disclose the existence of this request. Any such disclosure could impede the investigation being conducted and thereby interfere with the enforcement of the law. Thank you very much for your assistance in this matter.

DATED: February 19, 1988

JOSEPH P. RUSSONIELLO
United States Attorney


ROBERT WARD
Assistant United States Attorney
Chief, Criminal Division

Grand Jury 87-3
8703546

FED:ajb (415) 556-4227

EXHIBIT O

## APPENDIX B

Pursuant to an investigation by the Federal Grand Jury of the Northern District of California into a suspected felony, it is requested that your company furnish on November 4, 1987 all records requested pertaining to names and telephone numbers in Appendix A.

In addition, we request that you not disclose the existence of this request. Any such disclosure could impede the investigation being conducted and thereby interfere with the enforcement of the law. Thank you very much for your assistance in this matter.

DATED:

                                JOSEPH P. RUSSONIELLO
                                United States Attorney


                                ROBERT WARD
                                Assistant United States Attorney
                                Chief, Criminal Division


Pursuant to an investigation by the Federal Grand Jury of the Northern District of California into a suspected felony, it is requested that your company furnish on 2/26/88 all records requested pertaining to names and telephone numbers in Appendix A.

In addition, we request that you not disclose the existence of this request. Any such disclosure could impede the investigation being conducted and thereby interfere with the enforcement of the law. Thank you very much for your assistance in this matter.

DATED: February 19, 1988

                                JOSEPH P. RUSSONIELLO
                                United States Attorney


                                ROBERT WARD
                                Assistant United States Attorney
                                Chief, Criminal Division

# United States District Court

NORTHERN _____ DISTRICT OF _____ CALIFORNIA

TO:
Kathleen Graham, Manager
Cellular One
505 14th Street
Oakland, CA  94612

## SUBPOENA TO TESTIFY
## BEFORE GRAND JURY

SUBPOENA FOR:
☐ PERSON          ☒ DOCUMENT(S) OR OBJECT(S)

YOU ARE HEREBY COMMANDED to appear and testify before the Grand Jury of the United States District Court at the place, date, and time specified below.

| PLACE | COURTROOM |
|---|---|
| United States District Court<br>17th Floor, Federal Building<br>450 Golden Gate Avenue<br>San Francisco, CA  94102 | Grand Jury Room<br>17201 |
| | DATE AND TIME<br>November 4, 1987<br>9:30 a.m. |

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):*

Any and all existing records, including billing records, message unit records, and all other records and reports pertaining to the telephone number(s) in attached Appendix "A", incorporated herein by reference.
PLEASE NOTE:  That in accordance with the certification attached hereto as Appendix "B" and incorprated herein by reference, this request and information and records provided hereunder must be kept confidential.

VOLUNTARY COMPLIANCE WITH THIS SUBPOENA WILL BE DEEMED SATISFACTORY WHEN YOU PROVIDE THE REQUESTED MATERIALS TO THE AGENT SERVING THIS SUBPOENA AND NO APPEARANCE WILL BE NECESSARY.

☐ Please see additional information on reverse

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| CLERK<br>WILLIAM L. WHITTAKER<br><br>(BY) DEPUTY CLERK | DATE<br><br>Oct. 29, 1987 |
|---|---|

| This subpoena is issued on application<br>of the United States of America<br>JOSEPH P. RUSSONIELLO<br>United States Attorney | NAME, ADDRESS AND PHONE NUMBER OF ASSISTANT U.S. ATTORNEY<br>FLOY E. DAWSON, AUSA<br>450 Golden Gate Ave., Box 36055<br>San Francisco, CA  94102<br>FED:pl      (415) 556-4231 |
|---|---|

*If not applicable, enter none

## APPENDIX A

ALL OF THE FOLLOWING TELEPHONE NUMBER(S) IS/ARE IN AREA CODE <u>408</u>.

REQUEST ALL TELEPHONE TOLL RECORD INFORMATION AVAILABLE FOR
THE FOLLOWING NUMBER(S): <u>　221-2632　</u>

## TELEPHONE NUMBER

(408) 221-2632 - Telephone toll records of outgoing calls
for the number listed for the period
September 30, 1987 to October 28, 1987.

Grand Jury  87-2
8703546
FLOY E. DAWSON

Patricia Leu
(415) 556-5697

## APPENDIX B

Pursuant to an investigation by the Federal Grand Jury of the Northern District of California into a suspected felony, it is requested that your company furnish on November 4, 1987 all records requested pertaining to names and telephone numbers in Appendix A.

In addition, we request that you not disclose the existence of this request. Any such disclosure could impede the investigation being conducted and thereby interfere with the enforcement of the law. Thank you very much for your assistance in this matter.

DATED:                                     JOSEPH P. RUSSONIELLO
                                           United States Attorney


                                           ROBERT WARD
                                           Assistant United States Attorney
                                           Chief, Criminal Division

8703546

*EXHIBIT P*

**SENDER: COMPLETE THIS SECTION**

- ■ Complete Items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Deanna Johns_  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery

_Deanna Johns_  12/8/12

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

1. Article Addressed to: State of California
Attorney General Kamala Harris,
Dan Lockyear, Bruce Ortega,
ReiR. Onishi, Kathleen Boergers
Office of attorney General
455 Golden Gate Ave, Ste. 11000
San Francisco, CA 94102-7004

3. Service Type
☑ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)  7011 1570 0000 4010 1350

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER:**
- ■ Complete items 1 and/or 2 for additional services.
- ■ Complete items 3, 4a, and 4b.
- ■ Print your name and address on the reverse of this form so that we can return this card to you.
- ■ Attach this form to the front of the mailpiece, or on the back if space does not permit.
- ■ Write 'Return Receipt Requested' on the mailpiece below the article number.
- ■ The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery
Consult postmaster for fee.

3. Article Addressed to: State of California
Attorney General Kamala Harris,
Dan Lockyer, Bruce Ortega, Rei
R. Onishi, Kathleen Boergers,
Office of attorney General et al
455 Golden Gate ave, Ste. 11000
San Francisco CA 94102-7004

4a. Article Number  7011 1570 0000 4010 1343

4b. Service Type
☐ Registered  ☑ Certified
☐ Express Mail  ☐ Insured
☐ Return Receipt for Merchandise  ☐ COD

7. Date of Delivery  1/22/13

5. Received By: (Print Name)  Deanna Johnson

6. Signature: (Addressee or Agent)
X _Deanna Johnson_

8. Addressee's Address (Only if requested and fee is paid)

PS Form 3811, December 1994    102595-97-B-0179    Domestic Return Receipt

---

**SENDER:**
- ■ Complete items 1 and/or 2 for additional services.
- ■ Complete items 3, 4a, and 4b.
- ■ Print your name and address on the reverse of this form so that we can return this card to you.
- ■ Attach this form to the front of the mailpiece, or on the back if space does not permit.
- ■ Write 'Return Receipt Requested' on the mailpiece below the article number.
- ■ The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery
Consult postmaster for fee.

3. Article Addressed to: State of California
Attorney General, et al
455 Golden Gate Avenue
Suite 11000
San Francisco, CA
94102-7004

4a. Article Number  7011 1570 0000 4017 6976

4b. Service Type
☐ Registered  ☑ Certified
☐ Express Mail  ☐ Insured
☐ Return Receipt for Merchandise  ☐ COD

7. Date of Delivery  7/1/13

5. Received By: (Print Name)

6. Signature: (Addressee or Agent)
X _DT_

8. Addressee's Address (Only if requested and fee is paid)

PS Form 3811, December 1994    102595-97-B-0179    Domestic Return Receipt

VL-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|---|

NAME: *Steven Wayne Bonilla*

FIRM NAME: *J-48500, 3-E4-13*

STREET ADDRESS:

CITY: *San Quentin*    STATE: *CA*    ZIP CODE: *94974*

TELEPHONE NO.:    FAX NO.:

E-MAIL ADDRESS:

ATTORNEY FOR *(name)*:

| ☐ | COURT OF APPEAL, | APPELLATE DISTRICT, DIVISION |
|---|---|---|
| ☐ | SUPERIOR COURT OF CALIFORNIA, COUNTY OF | |

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER: *Bonilla*

DEFENDANT/RESPONDENT:

OTHER:

### REQUEST TO FILE
### NEW LITIGATION BY VEXATIOUS LITIGANT

Type of case: ☐ Limited Civil   ☒ Unlimited Civil   ☐ Small Claims
☐ Family Law   ☒ Probate   ☐ Other

CASE NUMBER:

1. I have been determined to be a vexatious litigant and must obtain prior court approval to file any new litigation in which I am not represented by an attorney. Filing new litigation means (1) commencing any civil action or proceeding, or (2) filing any petition, application, or motion (except a discovery motion) under the Family or Probate Code.

2. I have attached to this request a copy of the document to be filed and I request approval from the presiding justice or presiding judge of the above court to file this document *(name of document)*: *See attached*

3. The new filing has merit because *(Provide a brief summary of the facts on which your claim is based; the harm you believe you have suffered or will suffer; and the remedy or resolution you are seeking)*:

   *The evidence used at trial was the fruit of an illegal search and seizure that the prosecution concealed from the defense*

4. The new filing is not being filed to harass or to cause a delay because *(give reasons)*:

   *Because there was a Fourth Amendment violation*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: *October 12, 2020*

*STEVEN BONILLA*
(TYPE OR PRINT NAME)

▶ *Steven Bonilla*
(SIGNATURE)

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
VL-110 [Rev. September 1, 2018]

### REQUEST TO FILE
### NEW LITIGATION BY VEXATIOUS LITIGANT

Code of Civil Procedure, § 391.7
www.courts.ca.gov

JS 44   (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Steven Wayne Bonilla

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government
  Plaintiff
- ☒ 3  Federal Question
  *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government
  Defendant
- ☐ 4  Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                          *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
4th Amendment

Brief description of cause:
Illegal search and seizure

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:

JURY DEMAND:  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*

JUDGE _____    DOCKET NUMBER _____

DATE October 15, 2020

SIGNATURE OF ATTORNEY OF RECORD  Steven Wayne Bonilla  pro se

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**SENDER: COMPLETE THIS SECTION**

- ☒ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ☒ Print your name and address on the reverse so that we can return the card to you.
- ☒ Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Vicki R Nel_     ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
_Vicki Nelson_   12/26/12

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

JAMES BRYAN FUQUA
1625 THE ALAMEDA, Ste. 200
SAN JOSE, CA 95126

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7011 1570 0000 4010 1305

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- ☒ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ☒ Print your name and address on the reverse so that we can return the card to you.
- ☒ Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Teresa Wright_     ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
    1/1/13

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Alameda County District
attorney, et, al,
1225 Fallon Street #900
Oakland, CA 94612
7011 1570 0000 4017 6990

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7011 1570 0000 4017 6990

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery
Consult postmaster for fee.

3. Article Addressed to:
attorney General of the U.S.,
U.S. attorney's office,
FBI, et, al.,
P.O. Box 36055
San Francisco, CA 94102

4a. Article Number
7011 1570 0000 4017 6952

4b. Service Type
☐ Registered    ☒ Certified
☐ Express Mail    ☐ Insured
☐ Return Receipt for Merchandise    ☐ COD

7. Date of Delivery
8-7-13

5. Received By: (Print Name)
_THE BOSS_

6. Signature: (Addressee or Agent)
X _Max Bean_

8. Addressee's Address (Only if requested and fee is paid)

Is your RETURN ADDRESS completed on the reverse side?

Thank you for using Return Receipt Service.

PS Form 3811, December 1994    102595-97-B-0179    Domestic Return Receipt

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write 'Return Receipt Requested' on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to: SHERIFF'S OFFICE, WASHOE COUNTY DISTRICT ATTONEY, ET AL. P.O. BOX 11130 83 RENO, NV 89520

4a. Article Number  7011 1570 0000 4017 7034

4b. Service Type
☐ Registered          ☒ Certified
☐ Express Mail        ☒ Insured
☐ Return Receipt for Merchandise  ☐ COD

7. Date of Delivery

5. Received By: (Print Name)

8. Addressee's Address (Only if requested and fee is paid)

6. Signature: (Addressee or Agent)
X  APRIL DULONG

PS Form 3811, December 1994          102595-37-B-0179    Domestic Return Receipt

---

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write 'Return Receipt Requested' on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to: California Department of Correction & Rehabilitation, Dr. Jeffrey Beard - Secretary et al 1515 South Street #502-S Sacramento, CA 95811

4a. Article Number  7011 1570 0000 4017 7041

4b. Service Type
☐ Registered          ☒ Certified
☐ Express Mail        ☐ Insured
☐ Return Receipt for Merchandise  ☐ COD

7. Date of Delivery  JUL 03 2013

5. Received By: (Print Name)

8. Addressee's Address (Only if requested and fee is paid)

6. Signature: (Addressee or Agent)
X

PS Form 3811, December 1994          102595-97-B-0179    Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: California Correctional Peace Officers Association et al 755 Riverpoint Drive West Sacramento CA 95605-1634

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                              ☐ Agent
                               ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
C. Lee                          12-20-13

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:          ☐ No

3. Service Type
☒ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number (Transfer from service label)   7011 1570 0000 4010 1510

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

**SENDER: COMPLETE THIS SECTION**

- ☒ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ☒ Print your name and address on the reverse so that we can return the card to you.
- ☒ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

AT&T
208 S. AKARD ST.
DALLAS, TX 75202

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _S Card_    ☑ Agent
            ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery
S LAND                            11-15-11

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:          ☑ No

3. Service Type
☐ Certified Mail      ☐ Express Mail
☐ Registered          ☒ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)
7005 0390 0005 6698 9201

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

EXHIBIT Q

ACCOUNTING OF AMOUNT OF COMPENSATORY & PUNITIVE DAMAGES DUE:

The following compensatory damages were caused by the LIEN DEBTORS' violations of 18 U.S.C. §241, 813, 872, 1001, 1915, RICO §1961 et seq., 641; California Penal Code §125, 134, 153, 182(4)&(5), 186, 211, 418, 496, 518, 519, 532, 2112;& numerous sections of the Uniform Commercial Code §3-106, 3-108, 30110, 3-112 & Part 6.§9-601, et seq & et al §§.

(1) According to the Federal Bureau of Investigation (FBI), Report obtained via the Freedom of Information Act (FOIA), Sunstate Tropical Wholesale Nursery's financial accounts receivable, which was only comprised of money owed to Sunstate in promissory notes, balance on December 31, 1985, was FIFTEEN-MILLION, SEVEN-HUNDRED AND THIRTY-NINE-THOUSAND, EIGHT-HUNDRED AND SEVENTY-SEVEN DOLLARS AND SIXTY-SEVEN CENTS ON promissory notes, they were all bearing accrued interest at the rate of TEN PERCENT PER ANNUM.  Due to non-performance and failure to make the annual payments as required by the contractural promissory notes an additional TEN PERCENT PENALTY PER ANNUM HAS BEEN ADDED FOR DEFAULTING on making the annual payments that were required to be done in accordance with the terms of the contractural agreements made in the promissory notes.  Therefore, the balance due is calculated by the balance beginning with $15,739,877.67 on December 31, 1985, COMPOUNDED AT TWENTY PERCENT PER ANNUM UNTIL DEFAULT ON JANUARY 18, 2013, amounts to more than TWO-BILLION, ONE-HUNDRED & EIGHTY-TWO MILLION, TWO-HUNDRED & NINETY-THOUSAND DOLLARS. ($2,182,290,943.46).

(2) The Baritz Nightclub's revenue in January 1988, before Susan

INDEPENDENT CATERERS, INC., v. JONATHAN GOODFELLOW, ET AL., COMPLAINT: DEFAULT OF COMMONLAW JUDGEMENT, CLAIM & AFFIDAVIT & NOTICE OF DEFAULT

PAGE 1 OF 4.

1  Hanah Harris illegally and by fraud/oppression, seized management of the

2  business on her own and implementing her own changes in managing the

3  Baritz, expense was 4%, maintenance expense 3½%, sales tax 5½%, rent 6%,

4  labor and general administration ran 29%, leaving a cash profit for

5  Independent Caterers' 45% interest in the Baritz Nightclub to be

6  $38,319.00 per month or $459,828.00 per year.  This makes the loss of

7  income with the ten percent per annum adjustment, from January 1, 1988,

8  until default on January 17, 2013, to amount to $47,818,838.65.  The

9  value of a nightclub business is worth three times its cash profit for

10  the year which made Independent Caterers' forty-five percent valued at

11  $1,319,487.00 in January of 1988.  Which makes the current value,

12  adjusted at ten percent per annum, to be $14,026,176.69 as of the

13  default on January 17, 2013.  This brings the total loss and damages for

14  Independent Caterers' forty-five percent interest in the Baritz

15  Nightclub to be $61,908,015.34.

16      (3) The total compensatory damages and loss for the business known

17  as Independent Caterers dba Sunstate Tropical Wholesale Nursery and the

18  Baritz Nightclub's (forty-five percent interest) up until the default on

19  January 17, 2013, is $2,244,199,878.25.

20      (4) Damages given in punitive statutes, for violation of

21  Racketeering (RICO, 18 U.S.C. §1962, et seq.); and California Penal Code

22  §496(c), are triple of the actual damages (compensatory damages), to

23  $6,732,599,643.75; which is secured by the real and personal community

24  property of the LIEN DEBTORS.

25      (5) The total tally of compensatory and punitive damages as of the

26  day of default on January 17, 2013, is EIGHT-BILLION, NINE-HUNDRED AND

27  SEVENTY-SIX-MILLION, SEVEN-HUNDRED AND NINE-THOUSAND, FIVE-HUNDRED

INDEPENDENT CATERERS, INC., v. JONATHAN GOODFELLOW, ET AL., COMPLAINT: DEFAULT OF COMMONLAW JUDGEMENT, CLAIM
& AFFIDAVIT & NOTICE OF DEFAULT

PAGE 2 OF 4

1  AND THIRTEEN-DOLLARS ($8,976,799,513.00).  This balance continues to

2  accrue at the rate of ten percent per annum from the day of the default

3  on January 18, 2013, until paid in full.  It is secured by real and

4  personal community property of the LIEN DEBTORS; additional damages to

5  be added upon discovery and proof.

6      (6) Under the applicable rules of law (California Penal Code Section

7  1202.4), to calculate the damages and liability for the members of the

8  civil conspiracy (Defendants), for the false imprisonment of Sunstate's

9  President it is based on the twelve months of income prior to the false

10 imprisonment of its President, which began on September 20, 1988.  The

11 income for those twelve months is what is owed Sunstate Tropical

12 Wholesale Nursery, which is  the income owed Independent Caterers, Inc.,

13 on its fourty-five percent interest in the Baritz Nightclub, from

14 September 20, 1987 until September 19, 1988, which in turn is its

15 President's income for the same period.  Based on the calculations

16 stated above, the income for the twelve months prior to the false

17 imprisonment is nineteen-million, nine-hundred and twenty-six-thousand,

18 one-hundred and five-dollars and four cents   ($19,926,105.04), with the

19 base income adjusted ten percent per annum and the balance accrued at

20 the rate of ten percent per annum from September 20, 1988 until the

21 second default on August 3, 2013, the balance owed for the false

22 imprisonment of Sunstate's President is four-Billion, eight-hundred and

23 fourteen-million, two-hundred and seventy-seven-dollars and thirty-five

24 cents ($4,814,277,377.35).  Damage given by punitive statutes for

25 violation of Racketeering (RICO, 18 U.S.C. §1962, et seq.); and

26 California Penal Code §496(c), are triple of the actual damages given by

27 punitive statutes, brings the punitive damages due as of the day of

28

INDEPENDENT CATERERS, INC., v. JONATHAN GOODFELLOW, ET AL., COMPLAINT: DEFAULT OF COMMONLAW JUDGEMENT, CLAIM & AFFIDAVIT & NOTICE OF DEFAULT

PAGE 3 OF 4

1 default (August 3, 2013) to $14,442,832,132.05, which is secured by real

2 and personal community property of the LIEN DEBTORS.

3     (7) The total tally of compensation and punitive damages for the

4 false imprisonment of Sunstate's Presidents as of the day of default on

5 August 3, 2013 is nineteen-billion, two-hundred and fifty-seven-

6 million, one-hundred and nine-thousand, five-hundred and nine-dollars

7 and forty-cents. (#19,257,109,509.40).  This balance continues to accrue

8 at the rate of ten percent per  annum from the day of the dafault on

9 August 3, 2013 and at the rate of $7,185,666.42 per day until September

10 19, 2013 and from September 20, 2013 until September 19, 2014 at the rate

11 of $8,130,285.28 per day and from September 20, 2014 until September 19,

12 2015 at the rate of $9,191,465.22 per day, etc., or until such time as

13 the false imprisonment ceases to continue; and until paid in full.  It

14 is secured by the real and personal community property of the LIEN

15 DEBTORS

16 DATED: _11-21-12_____

17 The foregoing is declared true and correct under penalty of perjury

18 under the laws of California and the United States of America this 21

19 day of NOVEMBER 2012 at Tamal, Ca. 94974

20                                         _Steve Bonilla_____

21 DATED: 11-21-12

22

23 STEVEN BONILLA  AFFIANT, OWNER & MEMBER OF THE BOARD OF DIRECTORS

24 AUTHORIZED TO ACT FOR AND ON BEHALF OF INDEPENDENT CATERERS, INC.

25

26             "AFFIDAVIT OF NOTICE OF DEFAULT"

27

28

INDEPENDENT CATERERS, INC., v. JONATHAN GOODFELLOW, ET AL., COMPLAINT: DEFAULT OF COMMONLAW JUDGEMENT, CLAIM & AFFIDAVIT & NOTICEOF DEFAULT

PAGE 4 OF 4

*EXHIBIT A R*



# SUPERIOR COURT

COUNTY OF MADERA
STATE OF CALIFORNIA

Dale J Blea, Presiding Judge
Ernest J LiCalsi, Assistant Presiding Judge

200 South G Street
Madera, CA 93637
(559) 416-5525

Adrienne Calip
    COURT EXECUTIVE OFFICER
    CLERK OF THE COURT

Amy Downey
    ASSISTANT COURT EXECUTIVE OFFICER
    CLERK OF THE COURT

Darla Lamb
CIVIL DIVISION SUPERVISOR

Date:  September 22, 2020

Steven Bonilla J-48500, 3-E4-13
San Quentin, CA 94974

Case Number: <u>N/A</u>     Case Name: <u>N/A</u>

The enclosed Document is being returned to you for the following reasons:

<u>Request to File New Litigation by Vexatious Litigant, Order, and documents</u>

A challenge to the Marin County prefiling order must be heard in Marin County.  Please forward your documents to the proper Court.

Thank You,

Bernice Jackson-Hyatt
Senior Judicial Assistant

VL-110

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: |

NAME: *Steven Bonilla*
FIRM NAME: *J-48500 , 3-EY-13*
STREET ADDRESS:
CITY: *San Quentin*    STATE: *CA*    ZIP CODE: *94974*
TELEPHONE NO.:    FAX NO.:
E-MAIL ADDRESS: *N/A*
ATTORNEY FOR (name):

FOR COURT USE ONLY

☐ COURT OF APPEAL, _____ APPELLATE DISTRICT, DIVISION
☒ SUPERIOR COURT OF CALIFORNIA, COUNTY OF *Madera*
STREET ADDRESS:
MAILING ADDRESS: *200 South G Street*
CITY AND ZIP CODE: *Madera CA 93637*
BRANCH NAME:

PLAINTIFF/PETITIONER: *Bonilla*
DEFENDANT/RESPONDENT:
OTHER:

**REQUEST TO FILE**
**NEW LITIGATION BY VEXATIOUS LITIGANT**

Type of case: ☐ Limited Civil  ☒ Unlimited Civil  ☐ Small Claims
☐ Family Law  ☐ Probate  ☒ Other

CASE NUMBER:

1. I have been determined to be a vexatious litigant and must obtain prior court approval to file any new litigation in which I am not represented by an attorney. Filing new litigation means (1) commencing any civil action or proceeding, or (2) filing any petition, application, or motion (except a discovery motion) under the Family or Probate Code.

2. I have attached to this request a copy of the document to be filed and I request approval from the presiding justice or presiding judge of the above court to file this document *(name of document):*
   *Motions dealing with the court's lack of jurisdiction of subject matter and of person.*

3. The new filing has merit because *(Provide a brief summary of the facts on which your claim is based; the harm you believe you have suffered or will suffer; and the remedy or resolution you are seeking):*
   *Because the prosecution is "BARRED" from using evidence secured in an illegal search and seizure, as a matter of law, [367 US 643] and the fruit from the poisonous tree [371 US 471], the evidence is admissible, Thus, the court lacks jurisdiction and must dismiss the case forthwith - Continued on attached MC-025*

4. The new filing is not being filed to harass or to cause a delay because *(give reasons):*
   *Because a void judgment can be collaterally attacked at any time and in any place, [148 C.A. 2d 845], Pursuant to the Court's holdings in [99 C.A. 2d 523], the court has a duty to declare the judgment void.*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: *September 8 , 2020*

STEVEN WAYNE BONILLA
(TYPE OR PRINT NAME)

▶ *Steven Bonilla*
(SIGNATURE)

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
VL-110 [Rev. September 1, 2018]

**REQUEST TO FILE**
**NEW LITIGATION BY VEXATIOUS LITIGANT**

Code of Civil Procedure, § 391.7
www.courts.ca.gov

MC-025

SHORT TITLE: Bonilla

CASE NUMBER:

ATTACHMENT (Number): _____

(This Attachment may be used with any Judicial Council form.)

Pursuant to Case Law, [523 US 83], it is clearly stated that a judge may not rule on a case without first determining that he has jurisdiction of subject matter and of person not only of his own but also that of the court in a cause under review. Without jurisdiction the court can not proceed in any cause but must reverse the judgment forthwith. [350 4th 180; 404 F.Supp. 664, 665].

The prosecution committed fraud upon the court by falsely claiming that the FBI had procured my telephone records pursuant to a federal grand jury subpoena, from which all of the evidence in the case was the fruit thereof. (attached declaration),

However, the FBI admitted, under oath, (see their attached declaration), that the federal grand jury subpoena for my telephone records (408-446-3850, NEVER EXISTED, NOR WAS IT EVER SERVED, therefore, it must be construed that the phone records were secured in an illegal search and seizure in violation of the 4th Amendment to the U.S. Constitution. Because the enactment of the Customer's Right to Privacy in their phone records, Public Utility Code Section 2891, made it a 4th Amendment Right.

Which, pursuant to Case Law, [367 US 643 and 371 US 471], the law "BARRED" the prosecution from using evidence secured in an illegal search and seizure and the fruit of the poisonous tree. Which they did use.

Pursuant to Case Law, [99 C.A.2d 523] and [FRCP 12 (h)(3)], with the admission by the FBI of facts showing the courts lack of jurisdiction of subject matter and of person, the court is under a DUTY, owed to me, to declare the Alameda County Superior Court judgment, in case No. H-12210-A, null and void forthwith.

The law holds in Case Law, [116 F.2d 499, 453; 67 FRD 22, 25], that a party can not be precluded from raising the jurisdictional question by any form of laches, waiver or estoppel, nor can he be barred from doing so, pursuant to Case Law [49 US 495]. Wherefore, attacking the court's lack of jurisdiction SUPERSEDES the rule of vexatious Litigant, which is why the court must grant the request to file litigation, which is why there is so many prior cases. Unless the court can prove that the FBI committed perjury, the court lacked authority to declare me a vexatious litigant to begin with, because it can not show that the court under review never entered the federal grand jury subpoena on the court docket as an exhibit.

* to establish vexatious litigant, the different courts refused/failed to answer the jurisdictional question.

(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)

Page 1 of 1

(Add pages as required)

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

ATTACHMENT
to Judicial Council Form

www.courtinfo.ca.gov

VL-115

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY   STATE BAR NUMBER:<br>NAME: *Steven Wayne Bonilla*<br>FIRM NAME:<br>STREET ADDRESS: *J-48500, 3-EY-13*<br>CITY: *San Quenten*   STATE: *CA*   ZIP CODE: *94974*<br>TELEPHONE NO.:   FAX NO.: *N/A*<br>E-MAIL ADDRESS: *N/A*<br>ATTORNEY FOR (name): | FOR COURT USE ONLY |

| | |
|---|---|
| ☐ COURT OF APPEAL,   APPELLATE DISTRICT, DIVISION<br>☐ SUPERIOR COURT OF CALIFORNIA, COUNTY OF<br> STREET ADDRESS:<br> MAILING ADDRESS:<br>CITY AND ZIP CODE:<br>  BRANCH NAME: | |

| |
|---|
| PLAINTIFF/PETITIONER:<br>DEFENDANT/RESPONDENT:<br>  OTHER: |

| | |
|---|---|
| **ORDER TO FILE**<br>**NEW LITIGATION BY VEXATIOUS LITIGANT**<br>Type of case: ☐ Limited Civil  ☒ Unlimited Civil  ☐ Small Claims<br>        ☐ Family Law  ☐ Probate  ☒ Other | CASE NUMBER: |

**ORDER**

Approval to file the attached document is:

a. ☐ Granted

b. ☐ Denied

c. ☐ Other:

☐ Attachment to order.   Number of pages:

Date:

▶

PRESIDING JUDGE OR JUSTICE

Form Approved for Optional Use
Judicial Council of California
VL-115 [Rev. September 1, 2018]

**ORDER TO FILE**
**NEW LITIGATION BY VEXATIOUS LITIGANT**

Code of Civil Procedure, § 391.7
www.courts.ca.gov

For your protection and privacy, please press the Clear